**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| Tamara Parker,<br><br>Plaintiff,<br><br>vs.<br><br>Gaston County, North Carolina; William Sampson, individually; Advance Auto Parts, Inc.; and Olivia Pressley, individually,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 3:26-cv-00548-MOC-MTO** |

**BRIEF OF DEFENDANT**
**OLIVIA PRESSLEY IN SUPPORT OF MOTION TO DISMISS**

Defendant Olivia Pressley ("Pressley") respectfully submits this brief in support of her motion to dismiss all claims against Pressley in the Complaint filed by Plaintiff Tamara Parker ("Plaintiff"). (Doc No. 1 (the "Compl.").) Pressley moves to dismiss all claims against her pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiff's claims against Pressley rest solely on threadbare allegations that Pressley, a former employee of Advance Auto Parts, Inc. ("AAP") who had never met Plaintiff, responded to a police officer's inquiry and provided the officer a picture of Plaintiff's vehicle tag parked at the AAP store where Pressley worked. From this innocuous act, Plaintiff attempts to manufacture malicious prosecution and intentional infliction of emotional distress claims against Pressley, despite alleging

no facts suggesting Pressley harbored any ill will toward Plaintiff, knew Plaintiff's name, had any motive or intent to harm Plaintiff, or took any steps to initiate criminal proceedings after providing information requested by a police officer. The Complaint is equally devoid of factual allegations supporting a plausible inference that Pressley made any knowingly false statement about Plaintiff to Defendant William Sampson ("Officer Sampson"), much less a knowingly false statement that Officer Sampson relied upon when he later obtained search and arrest warrants after his own independent investigation. Indeed, Plaintiff alleges that Officer Sampson knew from GPS data that Plaintiff was not at the store on the date that Pressley allegedly misstated a photograph was taken of Plaintiff's car and that Officer Sampson ignored this exculpatory evidence when he chose to arrest Plaintiff. These allegations, even accepted as true, do not support a claim against Pressley. Moreover, allowing these claims to proceed against Pressley would undermine North Carolina public policy, which "allows citizens to make reports in good faith to police and prosecutors without fear of retaliation if the information proves to be incomplete or inaccurate." *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park,* 366 N.C. 505, 513-14 (2013).

Plaintiff's claims should be dismissed for multiple independent reasons. First, Plaintiff cannot satisfy the elements of her malicious prosecution claim because she fails to allege that Pressley initiated the earlier proceedings, where Pressley merely provided requested information to Officer Sampson, who exercised his own discretion to pursue the investigation and ultimately take Plaintiff into custody, and where Plaintiff alleges Officer Sampson knew that the alleged misstatement by Pressley

was incorrect before he arrested Plaintiff. Second, Plaintiff alleges no facts showing Pressley acted with malice or without probable cause as there is no allegation of ill-will, a desire for revenge, or even that Plaintiff and Pressley knew each other. Third, Plaintiff's bare allegation that the charges were dismissed through a *nolle prosequi*—without any allegations suggesting the dismissal indicated her innocence—fails to plausibly allege termination of the earlier proceedings in her favor. Fourth, Plaintiff's intentional infliction of emotional distress claim fails because she does not allege extreme and outrageous conduct by Pressley, intent to cause distress, or a severe and disabling emotional condition. Each of these deficiencies independently warrants dismissal.

## RELEVANT FACTUAL ALLEGATIONS

Pressley denies many material allegations in the Complaint, including that she knowingly or intentionally made any false statements to Officer Sampson or any other person about Plaintiff. The Complaint is noticeably devoid of any allegation suggesting a motive for Pressley to submit a false statement to a police officer or that Pressley encouraged any proceedings against Plaintiff, as Pressley had never met Plaintiff and harbored no ill will or animus towards her. She only provided information to Officer Sampson after he visited the AAP store in Dallas, North Carolina (the "Store") where Pressley worked.

Nonetheless, Pressley summarizes the relevant allegations below and treats well-pleaded allegations as true—as she must—for the sole purpose of this Rule 12(b)(6) motion to dismiss.

## I. STOLEN CELLPHONES ARE ALLEGEDLY DELIVERED TO THE STORE AND NON-PARTY EVA MAYO REPORTS FRAUDULENT TRANSACTIONS ON HER CHASE BANK ACCOUNT.

Plaintiff claims that "[i]t is important to note" that a stolen cell phone was delivered to the Store on May 13, 2024, and according to Plaintiff, Pressley signed for the packages. (Compl. ¶ 15.) Pressley supposedly "neglected to enter the arrival of the packages into the store's system." (Compl. ¶ 15.) Despite the alleged importance of this allegation, Plaintiff does not explain why this fact is relevant to her claims.

On May 16, 2024, Officer Sampson had a discussion with Eva Mayo, who reported that she had received fraud notifications from Chase Bank. (Compl. ¶ 10.) Verizon Wireless processed the charges, and Ms. Mayo was notified that "two mobile phones that had been purchased were delivered to an Advance Auto Part Store located at 1030 Dallas Cherryville Hwy, Dallas, NC." (Compl. ¶¶ 10, 11.) Although Plaintiff alleges in one paragraph that the phones were delivered to the Store on May 13, 2024, she alleges in a separate paragraph that Ms. Mayo received notification from Verizon that the phones were delivered "on the same day" that "[t]he matter was resolved by Verizon" without specifying which day is the "same day." (Compl. ¶¶ 10, 11.)

## II. OFFICER SAMPSON VISITS THE STORE AND UNNAMED EMPLOYEES MENTION AN UNNAMED "BLACK FEMALE."

On or after May 16, 2024, Officer Sampson visited the Store where "[a]ccording to his testimony, employees informed him that a black female had been inquiring about the status of a package delivery." (Compl. ¶ 12.) The unnamed "employees mentioned that the woman had visited the store on multiple occasions and that they

were expecting her to return." (Compl. ¶ 12.) Officer Sampson then "stated that the employees indicated they would collect a phone number or vehicle registration should the woman come back." (Compl. ¶ 12.) Plaintiff does not allege that she is the unnamed "black female" described in these allegations or even that she is a black female, nor does Plaintiff allege that Pressley was one of the unnamed employees at the Store that day.

## III. PRESSLEY ALLEGEDLY TELLS OFFICER SAMPSON ABOUT AN UNNAMED "BLACK FEMALE" WHO VISITED THE STORE AND PROVIDES A PICTURE OF PLAINTIFF'S VEHICLE REGISTRATION TAG PARKED AT THE STORE.

On May 20, 2024, Pressley supposedly contacted Officer Sampson and "falsely reported to Defendant Sampson that black female had just come in the store to retrieve the cellphones." (Compl. ¶ 13.) Pressley also "provided a photograph of the Plaintiff's vehicle's tag that was captured on May 16, 2024, when the Plaintiff had visited the store looking for an auto part for her husband." (Compl. ¶ 13.) Based on those two allegations, Plaintiff then alleges in conclusory fashion that "Pressley knowingly made a false statement to Defendant Sampson that black female had just come in the store to retrieve the cellphones on May 20, 2024." (Compl. ¶ 13.) Plaintiff does not allege that Pressley reported to Officer Sampson that Plaintiff was the black female who came to the store to retrieve the cellphones on May 20, 2024.

Plaintiff also alleges that "Pressley submitted pictures of the Plaintiff's vehicle registration tag to Defendant Sampson, claiming that the pictures were taken on May 20, 2024" and "[a]t that moment she transmitted the pictures and informed Defendant Sampson that they were captured on May 20, 2024, she was aware the statement was false." (Compl. ¶ 14.) Plaintiff does not deny that the vehicle belonged

to her or that it was parked at the Store on May 16, 2024, but she disputes that her car was parked at the Store on May 20, 2024.

## IV. OFFICER SAMPSON INVESTIGATES PLAINTIFF AND EXERCISES HIS INDEPENDENT JUDGMENT TO OBTAIN WARRANTS FOR HER ARREST WITHOUT ANY FURTHER INVOLVEMENT OR EFFORTS BY PRESSLEY.

After receiving the pictures from Pressley, Officer Sampson was able to "ascertain that the vehicle was associated with the Plaintiff's address." (Compl. ¶ 16.) Officer Sampson went to Plaintiff's last known address and "observed the Plaintiff inside the vehicle in question." (Compl. ¶ 16.) He then "prepared and secured a search warrant to conduct a search of the Plaintiff's residence." (Compl. ¶ 16.)

On May 25, 2024, Officer Sampson searched Plaintiff's residence where he found three cellphones and a laptop that he confiscated. (Compl. ¶ 17.) Plaintiff informed Officer Sampson that she had only visited the Store on May 16, 2024, to purchase a bolt and asked to review the surveillance video while "categorically den[ying] any involvement in the identity theft or the acquisition of the phones." (Compl. ¶ 17.) She also provided her cellphone password to Officer Sampson so he could examine the cellphone for evidence. (Compl. ¶ 17.)

On July 1, 2024, Officer Sampson examined the GPS data from Plaintiff's cellphone and according to Plaintiff, "***definitively confirmed*** that the Plaintiff was present solely at the [AAP] store on May 16, 2024," (Compl. ¶ 18 (emphasis added)), thus correcting any alleged misstatement by Pressley. Plaintiff further alleged that the "GPS data also ***irrefutably demonstrated*** that the Plaintiff was not in proximity to the [AAP] store on May 20, 2024, contrary to what Defendant Pressley reported to Defendant Sampson." (Compl. ¶ 18 (emphasis added).) Accordingly,

Plaintiff has alleged that Officer Sampson knew on July 1, 2024 – before he arrested Plaintiff – that Plaintiff was not at the Store on May 20, 2024.

Nonetheless, according to Plaintiff, Officer Sampson chose to ignore the "compelling exculpatory evidence that refutes Plaintiff's culpability" and "on July 10, 2024, Defendant Sampson secured warrants against the Plaintiff for allegedly attempting to acquire property through false pretenses and for identity theft." (Compl. ¶ 19; *see also id.* ¶ 29.) Plaintiff alleges no facts related to any information that Officer Sampson relied on to secure the warrants, much less that he relied on information provided by Pressley. Plaintiff does allege, however, that "Defendant Sampson acted . . . without probable cause at the time [he] obtained a warrant that resulted in the arrest of the Plaintiff." (Compl. ¶¶ 34, 49.) On September 1, 2024, Plaintiff was taken into custody for acquiring property through fraudulent means and for engaging in identity theft. (Compl. ¶ 20.) Plaintiff alleges that she was taken into custody "[a]s a direct and proximate result of the Defendant Sampson's wrongful conduct." (Compl. ¶ 47.)

On June 23, 2025, the Gaston County District Attorney's Office dismissed the charges through a *nolle prosequi*. (Compl. ¶ 21.) Plaintiff offers no further details about the nolle prosequi or the dismissal of her charges.

## ARGUMENT

"To survive a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), [Plaintiff] must allege facts sufficient to state all the elements of [her] claim." *Aljizzani v. Middle E. Broad. Networks, Inc.*, 178 F.4th 863, 868 (4th Cir. 2026)

(cleaned up). Plaintiff "cannot rely on labels and conclusions, and a formulaic recitation of the element of a cause of action." *Id.* (cleaned up). Her complaint must instead "contain sufficient *factual matter*, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 868-69 (cleaned up).

## I. PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED BECAUSE THE ALLEGATIONS DO NOT SUPPORT A PLAUSIBLE INFERENCE THAT PRESSLEY'S SINGLE STATEMENT TO OFFICER SAMPSON CONSTITUTES MALICIOUS PROSECUTION.

To survive a motion to dismiss her malicious prosecution claim against Pressley, Plaintiff must sufficiently plead that "(1) [Pressley] initiated the earlier proceeding; (2) malice on the part of [Pressley] in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of [Plaintiff]." *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park*, 366 N.C. 505, 512 (2013) ("*Cully's Motorcross*"). Plaintiff's threadbare complaint fails to plead sufficient facts as to any of the four elements of her malicious prosecution claim.

### *A. Plaintiff failed to allege facts showing that Pressley "initiated the earlier proceeding."*

The Supreme Court of North Carolina has adopted Comment (g) of Section 653 of the Restatement (Second) of Torts as it relates to a claim for malicious prosecution involving a private person who gives information to a public official. *Id.* at 513. This test replaced the more attenuated "but for" causation test to "adequately account for

the roles played by police and prosecutorial discretion" and "recognize[] that police and prosecutors have discretionary authority that can insulate from liability those who provide erroneous or mistaken information." *Id.* at 513-14. Quoting from Comment (g) of Section 653 of the Restatement, the North Carolina Supreme Court stated as follows:

> ***Influencing a public prosecutor.*** A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rules stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

*Id.* at 513 (quoting Restatement (Second) of Torts § 653 (cmt. g) (1977) ("Section 653" and "Comment G")).

Comment G further states that "if . . . the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible and a prosecution ***based upon it*** is procured by the person giving the false information." Comment G (emphasis added). Critically, Comment G only imposes liability if it appears that (i) the private person's "desire to have the proceedings initiated,

expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution," or (ii) "the information furnished by [the private person] ***upon which the official acted*** was known to be false." *Id.* (emphasis added).

Plaintiff cannot satisfy this standard by merely reciting that Pressley "knowingly made a false statement" as Plaintiff must also allege facts supporting a plausible inference that Pressley knew the statement was false and that any allegedly false information was material to the proceedings and acted upon by the public official in the decision to prosecute. *See, e.g.*, *Lindsey v. Orlando*, 232 F. Supp. 3d 1027, 1032 (N.D. Ill. 2017) ("Put another way, a proceeding is considered 'commenced' by a private citizen when the prosecution is 'based upon' the false information.") (cleaned up); *King v. Graham*, 126 S.W.3d 75, 78 (Tex. 2003) (explaining that under Comment G, a defendant cannot be liable if the allegedly false information "was immaterial to the decision to prosecute").[1]

Plaintiff alleges Pressley made two statements to Officer Sampson. Plaintiff first contends that Pressley "falsely reported" that "black female had just come in the store to retrieve the cellphones." (Compl. ¶ 13.) This alleged statement does not

---

[1] Other jurisdictions interpreting Section 653 and Comment G have held that a plaintiff must at least allege and prove that the proceedings were "based upon" the allegedly false statement by a private person. *See, e.g.*, *Danielson v. Hess*, 807 N.W.2d 113, 117 (S.D. 2011) ("This independent causation requirement has also been adopted in the Restatement (Second) of Torts § 653 cmt. g (1977)"); *Randall v. Lemke,* 726 N.E.2d 183, 186 (Ill. App. Ct. 2000); *Tucker v. Heaton*, No. 5:14-cv-00183-TBR-LLK, 2016 WL 7007527, at *9 (W.D. Ky. Nov. 29, 2016) (granting summary judgment where "decision to prosecute was based on an independent investigation, and not on the allegedly false information [defendant] supplied").

support a malicious prosecution claim because Plaintiff does not allege that she was the "black female" allegedly referenced by Pressley or even that she is a black female. Plaintiff also alleges that Pressley sent Officer Sampson a picture of Plaintiff's vehicle registration tag, claiming the picture was taken on May 20, 2024, but Pressley "was aware that this statement was false." (Compl. ¶ 14.) This threadbare allegation cannot support a claim for several reasons.

First, Plaintiff's unsupported allegation that Pressley "was aware that this statement was false" is precisely the type of conclusory allegation that *Twombly* and *Iqbal* forbid. Plaintiff alleges no facts from which knowledge of falsity could plausibly be inferred. She does not allege, for example, who took the picture, that Pressley made any statement identifying *when* the photograph was taken as opposed to *when* she transmitted it, or any facts suggesting a motive for Pressley to deliberately mislead Officer Sampson about a person she had never met. The Complaint does not even allege that Pressley knew the photograph depicted *Plaintiff's* vehicle, as opposed to simply a vehicle at the Store. Absent any factual foundation, the allegation that Pressley "was aware" the statement was false is an entirely insufficient recital of the legal standard dressed up as a factual allegation. The Fourth Circuit has rejected similar conclusory allegations when knowledge of falsity is an element of a claim and should do so here. *See, e.g.*, *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) (describing assertions that statements were "were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard to their veracity" as "entirely insufficient" and

"precisely the sort of allegations that *Twombly* and *Iqbal* rejected") (cleaned up); *Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 821 F. App'x 234, 240 (4th Cir. 2020) (holding that "[a] conclusory allegation of knowledge of falsity or reckless disregard thereof" is "entirely insufficient"); *Raceredi Motorsports, LLC v. Roush & Yates Racing Engines, LLC*, No. CIV. JKB-11-1309, 2011 WL 6026694, at *2 (D. Md. Dec. 2, 2011) ("[A] plaintiff alleging fraud may generally allege conditions of mind such as intent or knowledge but the plaintiff 'must still meet the minimum pleading standards by alleging specific facts supporting an inference of fraudulent intent.'").

Any inference is also unwarranted because the obvious alternative explanation is that Pressley mistakenly suggested through the timing of her communication that the picture was taken on May 20, 2024, or that Officer Sampson inadvertently assumed the picture was taken the day it was sent to him. *See Aljizzani*, 178 F.4th at 869 (finding that inference of discrimination was "unwarranted and implausible, particularly in light of the obvious alternative explanation"); *see also Bang Laugh Love, LLC v. Viragh*, No. 7:23CV00633, 2024 WL 1676841, at *4 (W.D. Va. Apr. 18, 2024) (dismissing claims because "Defendants have alleged nothing beyond insufficient labels and conclusions to show that any false statement was more than simply a mistake, or misunderstanding").

Second, Plaintiff alleges no facts suggesting Officer Sampson based later warrants, proceedings, or prosecutorial decisions on any alleged statement by Pressley. She alleges no facts suggesting that Pressley's statements to Officer Sampson supported the subsequent search warrant, arrest warrant, or decision to

take Plaintiff into custody. To the contrary, Plaintiff alleges that "[a]s a direct and proximate result of the Defendant Sampson's wrongful conduct . . . Plaintiff was taken into custody[.]" (Compl. ¶¶ 32, 47.) The similar causation allegation against Pressley only asserts that "[a]s a direct and proximate result of the Defendant Pressley['s] wrongful conduct" an unnamed person or persons "instigated a criminal investigation of the [] Plaintiff that resulted in the Plaintiff's arrest." (Compl. ¶ 60.) This type of attenuated "but for" causation is insufficient for a malicious prosecution claim against a private person. *See Cully's Motorcross Park*, 366 N.C. at 513-14.

Furthermore, Plaintiff alleges no facts suggesting that Pressley took any steps – other than answer questions and inquiries from Officer Sampson – to initiate, encourage, or direct any proceedings. Plaintiff does not allege that Pressley even knew Plaintiff's name or that Pressley communicated with Officer Sampson after sending him the picture. *See Wehrle v. Brooks*, 269 F. Supp. 785, 791 (W.D.N.C. 1966), *aff'd*, 379 F.2d 288 (4th Cir. 1967) (noting that there was not a "scintilla of evidence" that defendant "either instituted or procured the prosecution of [the plaintiff]" where the plaintiff was "unable to offer any evidence tending to show that [the defendant] even knew [the plaintiff's] name prior to the day she made positive identification of him"); *Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 196 (1991) (finding that defendant did not initiate proceedings where officer and supervisor arrested plaintiff based on information they received from defendant's agents but they were not directed to do so or to press charges and defendant's agents did not appear at the magistrate's office at any time).

Third, Plaintiff alleges that Officer Sampson knew after he examined Plaintiff's cellphone on July 1, 2024, that Plaintiff was not at the Store on May 20, 2024. According to Plaintiff, the GPS data "definitively confirmed" that Plaintiff was only there on May 16 and "irrefutably demonstrated that the Plaintiff was not in proximity to [Store] on May 20, 2024, contrary to what Defendant Pressley reported to Defendant Sampson." (Compl. ¶ 18.) Based on this alleged definitive confirmation and irrefutable evidence, Plaintiff maintains that Officer Sampson knew before he secured arrest warrants that Plaintiff was not at the Store on May 20, 2024. (Compl. ¶¶ 19, 20, 29, 30, 46.) These allegations negate any inference that the arrest of Plaintiff was based upon Pressley's alleged misstatement about the date of the photograph. *See Brown v. Gap Inc.*, No. 1:22-cv-00165, 2023 WL 3743134, at *8 (M.D. Pa. May 31, 2023). In *Brown*, a Pennsylvania federal court applied Pennsylvania law and Section 653 to dismiss malicious prosecution claims against Gap, Inc. despite allegations that Gap employees provided false statements to the police. *Id.* at *7-8. The Court explained that the plaintiffs also alleged that "prior to Plaintiffs' arrests, and despite the initial representations of [a Gap employee], the Officer Defendants had actual knowledge of the fact that Plaintiff had neither stolen any merchandise nor committed any other crime and, in fact, knew that they lacked probable cause." *Id.* at *8. Thus, the officers were "not deprived of an intelligent exercise of their discretion," because the officers "knew they lacked probable cause," and "ignored exculpatory statements and other evidence." *Id.*

The same is true here, where Plaintiff alleges that Officer Sampson knew

before he took Plaintiff into custody or obtained an arrest warrant that Plaintiff was not at the Store on May 20, 2024, which is the only allegedly false statement about Plaintiff that is attributed to Pressley. Plaintiff further alleges that Officer Sampson ignored "compelling exculpatory evidence that refutes the Plaintiff's culpability," (Compl. ¶ 19), and "acted . . . without probable cause at the time [he] obtained a warrant that resulted in the arrest of the Plaintiff," (Compl. ¶ 34). Just like in *Brown*, Plaintiff's allegations show that Officer Sampson was not deprived of an intelligent exercise of his discretion and Plaintiff thus failed to allege that Pressley initiated the proceedings.

Nor can Plaintiff salvage her claim by claiming Pressley's statement led to the earlier search warrant on May 25, 2024. Even if Plaintiff could show that the search warrant initiated a criminal proceeding, the Complaint alleges no facts connecting Pressley's statement about the date of the photograph to Officer Sampson's decision to seek a search warrant. Instead, the Complaint alleges only that Sampson used the photograph to identify Plaintiff's address, a fact that would have been equally available regardless of when the photograph was taken. (Compl. ¶ 16.) Indeed, Plaintiff admits that the photograph depicted her vehicle at the Store and the only alleged falsehood concerns the date, not the identity of the vehicle or its presence at the Store. Because Plaintiff does not allege that the date of the photograph was material to Officer Sampson's investigation and warrants, Plaintiff has not alleged that the prosecution was "based upon" any alleged misstatement by Pressley.

Accordingly, Plaintiff has not alleged that Pressley initiated the earlier

proceedings, and her malicious prosecution claim against Pressley should be dismissed.

### *B. Plaintiff failed to allege facts showing that Pressley acted with malice or that Pressley lacked probable cause.*

"'Malice' in a malicious prosecution claim may be shown by offering evidence that defendant 'was motivated by personal spite and a desire for revenge' or that defendant acted with 'reckless and wanton disregard' for plaintiffs' rights." *Fox v. City of Greensboro*, 279 N.C. App. 301, 316 (2021) (cleaned up). The malice element of a malicious prosecution claim may be satisfied by alleging actual malice or implied malice, which "may be inferred from want of probable cause in reckless disregard of the plaintiff's rights." *Kirschbaum v. McLaurin Parking Co.*, 188 N.C. App. 782, 789 (2008) (cleaned up); *but see Franklin v. Yancey Cnty.*, No. 1:09CV199, 2010 WL 317804, at *6 (W.D.N.C. Jan. 19, 2010) (dismissing malicious prosecution claim where plaintiff merely alleged that "there existed no probable cause for the criminal charge"). To seek punitive damages, Plaintiff must allege actual malice, meaning Plaintiff must allege facts showing that Pressley harbored "personal ill-will" or acted "under circumstances of insult, rudeness, or oppression, or in a manner which showed the reckless and wanton disregard of the plaintiff's rights." *Mathis v. Dowling*, 230 N.C. App. 311, 316 (2013) (cleaned up). Plaintiff must allege "more than mere legal conclusions and recitations of the elements to sufficiently allege malice." *Dahlman v. Washington Montessori, Inc.*, 818 F. Supp. 3d 772, 783 (E.D.N.C. 2025).

Here, Plaintiff never alleges that Pressley acted without probable cause, which forecloses any malice implied from lack of probable cause. And Plaintiff's allegations

fall far short of showing actual malice. She alleges no facts suggesting that Pressley harbored any ill will, spite, personal hostility toward Plaintiff, or a desire for revenge. There is no allegation that the two had ever even met, interacted, or had any prior relationship that would even hint at actual malice. To the contrary, Plaintiff alleges that Pressley only called Officer Sampson after he visited the Store as part of his investigation and Pressley did not pursue, encourage, or initiate any further proceedings or charges against Plaintiff after the fact. These allegations eliminate any plausible inference that Pressley had actual malice. *See Kirschbaum*, 188 N.C. App. at 790 (finding no malice where defendants did not express any desire to press charges and "Raleigh Police proceeded with misdemeanor larceny charge on their own steam, not defendants'"); *Mathis,* 230 N.C. App. at 316 (finding no evidence of malice because, among other things, the defendant only became involved at the request of a detective and did not pursue the criminal investigation).

### *C. Plaintiff's allegation that "all charges were dismissed . . . through a nolle prosequi" does not satisfy the fourth element.*

Plaintiff's only allegation as to the termination of the earlier proceeding in favor of Plaintiff is that "[o]n June 23, 2025, all charges were dismissed by the Gaston County District Attorney's office through a nolle prosequi." (Compl. ¶ 21; *see also id.* ¶¶ 33, 48, 61.) Although dismissal through a *nolle prosequi* may satisfy this element in certain circumstances, merely pleading dismissal through a *nolle prosequi* without any additional allegations about the dismissal or allegations showing that dismissal through a *nolle prosequi* indicated Plaintiff's innocence does not allege facts to support a plausible inference that the earlier proceeding terminated in favor of

Plaintiff. *See Tucker v. Duncan*, 499 F.2d 963, 965 (4th Cir. 1974) (overturning North Carolina malicious prosecution verdict based on charges dismissed "by way of nol-pros" obtained by plaintiff's attorney); *Alexander v. Lindsey*, 230 N.C. 663, 671 (1949) ("[W]here the criminal action is withdrawn or terminated by compromise brought about by the defendant, an action for malicious prosecution based thereon will not lie."). Applying South Carolina law, which "accords with the Restatement (Second) of Torts, § 660 (1977)," the Fourth Circuit predicted that the South Carolina Supreme Court "would agree with other courts that have also relied on the Restatement's formulation of the rule insofar as they have imposed upon malicious prosecution plaintiffs the affirmative burden of proving that the *nolle prosequi* was entered under circumstances which imply or are consistent with innocence of the accused." *Nicholas v. Wal-Mart, Inc.*, 33 F. App'x 61, 64-65 (4th Cir. 2002); *see also Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002) (holding that entry of a *nolle prosequi* did not show termination in favor of plaintiff for purposes of § 1983 civil rights claim); *Lemoine v. Wolfe*, 812 F.3d 477, 479 (5th Cir. 2016) (certifying the question to the Louisiana Supreme Court and explaining that filing a *nolle prosequi* does not necessarily satisfy element for malicious prosecution claim).

Here, Plaintiff's sole allegation that charges were dismissed through a *nolle prosequi*, without any additional allegations suggesting the dismissal implies or is consistent with Plaintiff's innocence, does not adequately allege that the prior proceeding was terminated in Plaintiff's favor.

## II. PLAINTIFF FAILED TO PLEAD A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST PRESSLEY.

"The essential elements of an action for intentional infliction of emotional distress ["IIED"] are 1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82 (1992) (cleaned up). Plaintiff's IIED claim also fails for multiple reasons.

First, Plaintiff cannot meet the "stringent" standard for extreme and outrageous behavior. *Id.* at 83. In particular, Plaintiff must allege extreme and outrageous acts by Pressley that "exceed[] all bounds usually tolerated by decent society." *Dickens v. Puryear*, 302 N.C. 437, 446 (1981). Plaintiff relies instead on vague and conclusory group pleadings[2] that "Defendants[‘] extreme and outrageous conduct caused the Plaintiff severe emotional distress, including stress, depression, anxiety and loss of enjoyment of life" and that "Defendant[s'] conduct was recklessly indifferent to the likelihood it would cause severe emotional distress to the Plaintiff." (Compl. ¶¶ 69, 71.) These labels and recitations of buzzwords fall far short of pleading an IIED claim under North Carolina law. *See, e.g.*, *Satterwhite v. Wal-Mart Stores East, L.P.*, No. 5:11-CV-363, 2012 WL 255347, at *13-14 (E.D.N.C. Jan. 26, 2012) (dismissing IIED claim based on factual allegations "incorporated by reference" because the allegations do not connect allegations to specific conduct alleged to be

---

[2] Alleging acts by "Defendants" is disfavored as it often fails to satisfy the pleading standards under *Twombly* and *Iqbal* because Plaintiff must plead facial plausibility of each claim against each defendant. *See Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023).

extreme and outrageous).

Notably, Plaintiff cannot simply rely on her allegations in support of her malicious prosecution claim because, even if she had stated a claim for malicious prosecution (she has not), those allegations do not support an IIED claim. *See, e.g.*, *Chidnese v. Chidnese*, 210 N.C. App. 299, 317 (2011); *Barber v. Coastal Horizons Ctr., Inc.*, No. 7:21-CV-00061-M, 2022 WL 22608317, at *3 (E.D.N.C. July 1, 2022) ("North Carolina courts have held that false accusations of criminal conduct do not qualify as extreme and outrageous conduct."). In *Chidnese*, for example, the North Carolina Court of Appeals reversed dismissal of plaintiff's malicious prosecution claims but affirmed dismissal of the IIED claim under North Carolina's more forgiving notice pleading standard. *Chidnese*, 210 N.C. App. at 317 (collecting cases holding that false reports of child abuse and other criminal charges were not extreme and outrageous). Thus, even if the Court accepted the facially implausible inference that Pressley had somehow falsely accused Plaintiff of a crime, that act would still not support an IIED claim.

Second, Plaintiff's IIED claim suffers from the same deficiencies as her malicious prosecution claim because she cannot allege that Pressley intended to cause her emotional distress as Plaintiff does not even allege that Pressley knew her name or had any motive to harm Plaintiff. *See, e.g.*, *Piro v. McKeever*, 245 N.C. App. 412, 419 (2016) (affirming dismissal based on "conclusory allegations" where "plaintiff fails to assert any facts that would establish defendant [] knew or had substantial certainty plaintiff would suffer severe emotional distress as a result of [defendant's

alleged acts]"); *Vurimindi v. Link*, No. 1:10CV965, 2011 WL 5570216, at *4 (M.D.N.C. Nov. 16, 2011) ("Plaintiff must allege sufficient facts for this Court to reasonably infer that Defendants intended to cause and did cause Plaintiff severe emotional distress."). Among other things, Plaintiff also cannot allege that any act by Pressley caused the alleged emotional distress because Plaintiff alleges they arise from "[her] unlawful arrest," (Compl. ¶ 62), but Plaintiff alleges that Pressley's acts only caused the criminal investigation, not her arrest, (Compl. ¶ 60).

Finally, Plaintiff has not pleaded severe emotional distress for purposes of an IIED claim because "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Waddle*, 331 N.C. at 84 (quoting the Restatement (Second) of Torts § 46, cmt. j (1965)). Thus, Plaintiff must allege "severe emotional distress," meaning "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304 (1990). "[W]hen considering whether an allegation of emotional distress could be found to rise to the level of severe emotional distress, a court shall consider the intensity and duration of the alleged distress." *Lineberger v. Newton Police Dep't*, No. 5:14-CV-00137-RLV-DCK, 2016 WL 5376290, at *4 (W.D.N.C. Sept. 23, 2016). "[W]ithout factual allegations regarding the type, manner, or degree of severe emotional distress a plaintiff claims to have experienced, a plaintiff's complaint fails to sufficiently allege severe emotional

distress." *Moschos v. Moschos*, 287 N.C. App. 162, 166 (2022).

In her IIED claim, Plaintiff alleges only that unspecified conduct by unidentified "Defendants" caused "severe emotional distress, including stress, depression, anxiety and loss of enjoyment of life" for which she "is currently receiving medical care from a physician." (Compl. ¶¶ 69, 70.) She offers slightly more details in her malicious prosecution claim by alleging in conclusory fashion that she suffers "PTSD type symptoms, including sadness, anxiety, stress, anger, depression, frustration, sleeplessness, nightmares and flashbacks[.]" (Compl. ¶ 62.) But Plaintiff alleges no facts about the intensity or duration of her alleged emotional distress or even which of the symptoms or potential diagnoses are being treated by a physician. *See Lineberger*, 2016 WL 5376290, at *4 (dismissing IIED claim where complaint made "few allegations regarding the intensity, impact, and duration of the mental pain [plaintiff] experienced, alleging only that his emotional distress 'continues'").

For those reasons, Plaintiff's IIED claims should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Pressley respectfully requests that the claims against her be dismissed with prejudice.

This, the 15th day of September, 2026.


**WAGNER HICKS PLLC**

/s/ *Jonathon D. Townsend*
Jonathon D. Townsend (N.C. State Bar No. 51751)
831 E. Morehead Street, Suite 860
Charlotte, NC 28202
Telephone: (704) 705-7787
jonathon.townsend@wagnerhicks.law

*Counsel for Defendant Olivia Pressley*

## CERTIFICATION OF BRIEF LENGTH

I hereby certify that the foregoing **BRIEF OF DEFENDANT OLIVIA PRESSLEY IN SUPPORT OF MOTION TO DISMISS** complies with Local Rule 7.1(d), and that this brief does not exceed 25 pages, the font size is a minimum of 12 point, lines are double-spaced, margins are one inch, and each page is numbered.

This, the 15th day of September, 2026.

**WAGNER HICKS PLLC**

/s/ *Jonathon D. Townsend*
Jonathon D. Townsend

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of filing to all parties receiving electronic service including the following:

Latrisha Chantel Cherry-Lassiter
CCL LAW OFFICE, PLLC
1851 W. Ehringhaus St. #126
Elizabeth City, NC 27909
chantelcherrylassiter@ccllaw.org
*Counsel for Plaintiff*

Scott Douglas MacLatchie
HALL BOOTH SMITH, P.C.
11215 North Community House Rd
Suite 750, Charlotte, NC 28277
smaclatchie@hallboothsmith.com
David Benjamin Goldberg
OFFICE OF THE COUNTY ATTORNEY
PO Box 1578, Gastonia, NC 28052
david.goldberg@gastongov.com
*Attorneys for Gaston County and William Sampson*

Mark Andrew Nebrig
Gabrielle Rife
Jacqueline Y. Ferrell
Rashaad Bryon Hamilton
MOORE & VAN ALLEN
100 North Tryon St, Ste 4700
Charlotte, NC 28202
marknebrig@mvalaw.com
gabriellerife@mvalaw.com
jacquelineferrell@mvalaw.com
rashaadhamilton@mvalaw.com
*Counsel for Defendant Advance Auto Parts, Inc.*

This the 15th day of September, 2026.

**WAGNER HICKS PLLC**

/s/ *Jonathon D. Townsend*
Jonathon D. Townsend