UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:26-cv-548-MOC-WCM

| | | |
|---|---|---|
| **TAMARA PARKER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WILLIAM SAMPSON, et al.,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

## 1. INTRODUCTION

This is a civil rights action under 42 U.S.C. § 1983 with supplemental state claims against an officer with the Gaston County Police Department who swore out a warrant for Plaintiff's arrest on larceny charges.[1] The First Amended Complaint (FAC) also includes state law claims for malicious prosecution and intentional infliction of emotional distress against Advance Auto Parts and its employee who provided the information allowing the police to identify Plaintiff as the perpetrator, including giving the police a photo of the car—with license plate—that Plaintiff was driving.

The gist of the FAC is that the Advance Auto employee lied, and that the officer should have eliminated Plaintiff as a suspect without obtaining the arrest warrant after receiving data from Plaintiff's cell phone carrier indicating her phone pinged in the store parking lot on a date other than when the employee said she obtained the photo of Plaintiff's car. According to the FAC, the charges remained pending against Plaintiff for nearly eleven months before the District Attorney finally dismissed them.

[1] The original Complaint included Gaston County as the lead Defendant. The First Amended Complaint omits Gaston County as a Defendant.

The FAC asserts the following four causes of action:

1. Claim for malicious prosecution under 42 U.S.C. § 1983 against Officer William Sampson.

2. State law claim for malicious prosecution against Officer Sampson.

3. State law malicious prosecution claim against Advance Auto Parts and its employee, Olivia Pressley.

4. State law claim for intentional infliction of emotional distress against all Defendants.

Officer Sampson is entitled to dismissal of the claim under 42 U.S.C. § 1983—both on the merits and on the basis of qualified immunity—for the FAC's failure to sufficiently demonstrate the absence of probable cause for Plaintiff's arrest.

On the state law claim for malicious prosecution, Officer Sampson is similarly entitled to dismissal on the merits and on the separate basis of public official immunity.

On the claim for intentional infliction of emotional distress, Sampson is entitled to dismissal because the FAC fails to demonstrate the absence of probable cause for Plaintiff's arrest.

## 2. <u>STATEMENT OF FACTS</u>

The FAC alleges that on May 16, 2024 Officer William Sampson of the Gaston County Police Department spoke to a woman named Eve Mayo after she reported fraudulent charges to her credit card that took place on or about May 10. Mayo explained the charges related to the purchase of two iPhones which Verizon confirmed were delivered to the Advance Auto Parts Store located at 1030 Dallas Cherryville Highway in Gaston County. (Doc. 24, ¶¶ 9-10). According to the FAC, the phones were delivered to the store on May 13 and signed for by

Defendant Olivia Pressley, who then "neglected to enter the arrival of the packages into the store's system." (*Id*. at ¶ 14).

After speaking to victim Mayo, Sampson went to Advance Auto where employees told him a black female had already visited the store several times asking about the delivered iPhones. The employees agreed that the next time this woman returned they would try to obtain a phone number or at least the license plate of the woman's car. (*Id*. at ¶ 11). "On May 20, 2024, Defendant Sampson received communication from Defendant Olivia Pressley, an employee of the Advanced Auto Parts Store, acting within the scope of her employment and during her work hours. Defendant Pressley made a false report to Defendant Sampson, alleging that a black female had entered the store for the purpose of retrieving cellphones. Furthermore, Defendant Pressley furnished a photograph of the license plate belonging to Plaintiff's vehicle, which had been captured on May 16, 2024, when Plaintiff visited the store in search of an automotive component for her husband. Defendant Pressley knowingly and deliberately made this false statement to Defendant Sampson, thereby falsely identifying Plaintiff as the black female who allegedly entered the store to retrieve the cellphones on May 20, 2024." (*Id*. at ¶ 12). More specifically, the FAC alleges Pressley falsely told Sampson the photos of Plaintiff's license plate "were captured on May 20, 2024[.]" (*Id*. at ¶ 13).

Sampson traced the license plate to Plaintiff's residence where he then "observed the Plaintiff inside the vehicle in question." (*Id*. at ¶ 15). Sampson obtained a search warrant for the residence which was executed on May 25. During the search Plaintiff told Sampson the only time she visited Advance Auto was on May 16 to purchase a bolt. (*Id*. at ¶¶ 15-16).

Plaintiff's cell phone was seized during the search and subsequently forensically analyzed for location data. The GPS data apparently placed the phone at or in the store on May

16. The FAC characterizes that data as "definitively confirm[ing]" that *Plaintiff herself* was never at the store except on May 16. "Furthermore, it is believed that the GPS data also irrefutably demonstrated that the Plaintiff was not in proximity to the Advanced Auto Parts store on May 20, 2024, contrary to what Defendant Pressley reported to Defendant Sampson." (*Id*. at ¶ 17).

Wholly ignoring the fact GPS location data tracked only the location of Plaintiff's phone—not Plaintiff herself—the FAC boldly asserts the data presented Sampson with "compelling exculpatory evidence that refutes the Plaintiff's culpability[.]" Yet, Sampson went ahead and presented his case to a magistrate allegedly without disclosing "that the GPS data undermined Defendant Pressley identification of the Plaintiff on May 20, 2024." (*Id*. at ¶ 18). The magistrate found probable cause and issued warrants for Plaintiff's arrest on July 10, 2024 charging her with identity theft and acquiring property by false pretenses. Plaintiff was taken into custody on September 1, processed, and released on her own recognizance. (*Id*. at ¶¶ 18-19). The Gaston County District Attorney dismissed the charges through a *nolle prosequi* on June 23, 2025. (*Id*. at ¶ 20).

## 3. <u>OFFICER SAMPSON IS WITHOUT LIABILITY UNDER 42 U.S.C. § 1983</u>

### A. <u>On the merits</u>

Plaintiff's sole constitutional claim is asserted against Sampson in his individual capacity for allegedly causing her arrest even though he knew—from the GPS data—she "was present solely at the Advance Auto Parts store on May 16, 2024," and "was aware that the Plaintiff was nowhere in proximity to the Advanced Auto Parts store on May 20, 2024, contrary to what Defendant Pressley reported to Defendant Sampson." (*Id*. at ¶ 29). The faulty premise underlying this theory of liability should be obvious: GPS technology can only identify the *location of the*

*device* being tracked, not the whereabouts of a person who owns or is associated with the device. *See, e.g., U.S. v. Witt*, 43 F.4th 1188, 1196 (11th Cir. 2022) ("the tracking information only reveals the location of a device—not the location of its owner"); *Fulsom v. Soto*, 2015 WL 10793692 at *2 (E.D.Cal. 2015) (noting that a "GPS device directly shows only its own location; the location of the individual to whom the device is assigned is an inference").

Here, Sampson was presented with Pressley's unambiguous assertion that the same black female who had previously inquired about the shipped cell phones returned to the store on May 20 driving the vehicle depicted in the photo Pressley provided Sampson. In light of that positive eyewitness identification, learning that Plaintiff's phone did not ping at the store on May 20 did not rule out for Sampson that Plaintiff returned to the store without her phone, or simply had it turned off. The fact Plaintiff admits the photographed license plate belonged to her car only further underscores Sampson's belief in what Pressley told him. ("Upon receiving the photograph of the *Plaintiff's vehicle license plate number* from Defendant Pressley, Defendant Sampson was able to ascertain that the vehicle was associated with the Plaintiff's address.") (Doc. 23, ¶ 15) (emphasis added).

Keep in mind it is Plaintiff's burden to plead sufficient facts showing Sampson acted without probable cause. *English v. Clark*, 90 F.4th 636, 645-46 (4th Cir. 2024) ("[Plaintiff] makes two Fourth Amendment claims: one for false arrest and one for malicious prosecution. Both claims require [Plaintiff] to prove he was seized without probable cause."). An officer has probable cause to arrest when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). In assessing whether probable cause exists, it is highly significant that a witness or victim "gave the

officers specific information that allowed them to track down the particular individual she meant to identify." *English v. Clark, supra*, 90 F.4th at 646-47. Pressley told Sampson the black female driver of a specific vehicle was the person who had repeatedly visited Advance Auto asking about the delivered cell phones. Pressley provided Sampson with a photo of that vehicle's license plate on July 20, telling him the photo was taken that same day after the driver returned to the store. Using the license plate, Sampson tracked Plaintiff down at her residence, where she admitted she had in fact driven to Advance Auto on July 16, just not on July 20.

The FAC's allegations simply do not support an inference that Sampson had any reason to disbelieve Pressley. That being so, he had probable cause to seek warrants for Plaintiff's arrest. *See, e.g., Pasiewicz v. Lake County Forest Preserve*, 270 F.3d 520, 524 (7th Cir. 2001) ("When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible."). Sampson is therefore entitled to dismissal of Plaintiff's Section 1983 claim as a matter of law.

**B. <u>On the basis of qualified immunity</u>**

Sampson is entitled to qualified immunity unless preexisting case law prohibited him from seeking Plaintiff's arrest under these circumstances. *See Smith v. Gilchrist*, 749 F.3d 302, 308 (4th Cir. 2014) ("To survive a claim of qualified immunity, a plaintiff must satisfy the following two-prong test: '(1) the allegations underlying the claim, if true, substantiate [a] violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known.'"). Indeed, for Plaintiff to meet that burden here, she would have to show that *every* reasonable police officer would have

foregone having her charged. *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) ("A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'"). *See also Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) ("to show a violation of clearly established law, [the plaintiff] must identify a case that put [defendant police officer] on notice that his specific conduct was unlawful").

The FAC alleges no conduct by Sampson that contravened binding precedent at the time. To the contrary, the allegations demonstrate that instead of acting on his own and effecting a warrantless arrest, Sampson took the time to present his investigation to a magistrate for a judicial determination of probable cause, which is exactly the option our Fourth Amendment case law encourages. *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) ("When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983. Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates.").

The bottom line is there was nothing about Sampson's conduct that violated Plaintiff's constitutional rights. Indeed, Plaintiff had no clearly established right *not* to be charged under these facts. That being so, Sampson is entitled to qualified immunity as a matter of law.

## 4. THE EXISTENCE OF PROBABLE CAUSE BARS THE STATE LAW CLAIM FOR MALICIOUS PROSECUTION AS WELL

### A. On the Merits

The Second Claim for Relief seeks damages for malicious prosecution under North Carolina law, which is coterminous with federal law on the issue of probable cause. "Probable cause to arrest exists when the officer has reasonable grounds to believe that a crime has been

committed and that the suspect committed it." *Richardson v. Hiatt*, 95 N.C. App. 196, 200, 381 S.E.2d 866, 868 (1989). *See also Beeson v. Palombo*, 220 N.C.App. 274, 278, 727 S.E.2d 343, 347 (2012) (reaffirming "'[t]he same probable cause standards under the Fourth and Fourteenth Amendments apply to both federal and state warrants'").

It is therefore beyond cavil the same probable cause that defeats the Section 1983 claim for malicious prosecution also defeats Plaintiff's state law claim.

### B. The Malicious Prosecution Claim against Sampson is Also Barred by Public Official Immunity

Under the doctrine of public official immunity, "police officers enjoy absolute immunity from personal liability for their discretionary acts done without corruption or malice." *Schlossberg v. Goins*, 141 N.C.App. 436, 445, 540 S.E.2d 49, 56 (2000). The burden of proof on the issue of public official immunity rests with the plaintiff. In other words, it is the plaintiff's burden to prove a defendant is not entitled to immunity. *See, e.g., McCarn v. Beach*, 128 N.C. App. 435, 437, 496 S.E.2d 402, 404 (1998) (a plaintiff seeking to defeat an officer's motion to dismiss on grounds of public official immunity "must make a prima facie showing that the officer's conduct is malicious, corrupt, or outside the scope of his official authority").

Aside from the FAC's shibboleth that Sampson acted with malice, the facts as plead do not come anywhere close to supporting that inference. Sampson is therefore entitled to public official immunity on the malicious prosecution claim as a matter of law.

## 5. THE EXISTENCE OF PROBABLE CAUSE ALSO BARS THE STATE LAW CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

It is axiomatic that a plaintiff cannot recover damages for emotional distress where the defendant did not act tortiously. *See, e.g., Guthrie v. Conroy*, 152 N.C.App. 15, 24, 567 S.E. 2d 403, 410 (2002) (affirming dismissal of IIED claim where defendant's employee did not engage

in underlying "tortious behavior"). Because Plaintiff's arrest was supported by probable cause, Sampson is entitled to dismissal of the Fourth Claim for Relief as well.

## 6. CONCLUSION

Protestations of innocence do not require an officer to disregard objective evidence of guilt. The Supreme Court has repeatedly cautioned "[p]robable cause 'is not a high bar.'" *D.C. v. Wesby*, 583 U.S. 48, 57 (2018). Under the facts as plead, Officer Sampson possessed probable cause because he reasonably relied upon information from a third-party witness placing Plaintiff at Advance Auto on May 20 and positively identifying her as the person making specific inquiries about delivery of the fraudulently purchased iPhones.

Therefore, whether on the merits or on the bases of qualified immunity and public official immunity, the FAC fails to state actionable claims against Sampson, and he is entitled to dismissal as a matter of law.

Dated: October 12, 2026

/s/Scott D. MacLatchie
Scott D. MacLatchie
North Carolina Bar No. 22824
Hall Booth Smith, P.C.
11215 N. Community House Rd., Ste. 750
Charlotte, North Carolina 28277
Telephone No. (980) 949-7820
smaclatchie@hallboothsmith.com
*Attorney for Defendants Gaston County and William Sampson*

/s/David Goldberg
David Goldberg
North Carolina Bar No. 49229
128 West Main Ave.
P.O. Box 1578
Gastonia, NC 28052
Telephone No. (704) 866-3400
David.Goldberg@gastongov.com
*Attorney for Defendants Gaston County and William Sampson*