**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. 3:26-cv-548**

| | |
|---|---|
| TAMARA PARKER,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM SAMPSON, individually; ADVANCE STORES COMPANY, INC.; d/b/a ADVANCED AUTO PARTS STORE; and OLIVIA PRESSLEY, individually,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANT ADVANCE STORES COMPANY, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT** |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Advance Stores Company, Inc. ("AAP")[1] moves to dismiss Plaintiff's claims against AAP. In support of its motion to dismiss, AAP shows the Court as follows:

## INTRODUCTION

When law enforcement asks for information to assist in an investigation, you give it. Doing so should not expose you to a $15 million lawsuit for malicious prosecution and intentional infliction of emotional distress. And it certainly should not expose your employer. But that is exactly what Plaintiff attempts with her Amended Complaint. Under the prevailing law, however,

---

[1] Advance Stores Company, Incorporated, which is a wholly owned subsidiary of Advance Auto Parts, Inc., is the proper entity; however, Advance Stores Company, Incorporated does not "do business as Advanced [sic] Auto Parts Store." To avoid confusion and maintain consistency with undersigned counsel's prior filings, this Memorandum of Law continues to refer to Defendant Advance Stores Company, Incorporated as "AAP."

Plaintiff's bare allegations do not withstand the slightest scrutiny, justifying dismissal of Plaintiff's claims against AAP.

Under the Rule 12(b)(6) standard, Plaintiff's Amended Complaint lacks the specificity required to plausibly allege the malicious prosecution or intentional infliction of emotional distress claims asserted against AAP. Stripped of its vague and conclusory allegations, the Amended Complaint reveals only that Olivia Pressley, "an employee for Advance Auto Parts, Inc.," provided information to a law enforcement officer engaged in an active fraud investigation.

Despite asserting that Ms. Pressley "knowingly" provided false information and acted "maliciously," Plaintiff fails to allege facts supporting a plausible inference that Ms. Pressley knew any statement she made or information she provided was untrue, or that she harbored any ill will, spite, or personal hostility toward Plaintiff. In fact, Plaintiff ***does not even allege Ms. Pressley knew who Plaintiff was***. Similarly, Plaintiff baldly asserts that Ms. Pressley's allegedly wrongful actions were done in the scope of her employment with an Advance Auto Parts store without making a single factual allegation concerning Ms. Pressley's job duties, company policies, or even that Ms. Pressley was working at the time of the allegedly tortious conduct. Plaintiff further fails to support her intentional infliction of emotional distress claim with sufficient allegations of Ms. Pressley's extreme and outrageous conduct, severe emotional distress, or that Ms. Pressley intended to cause severe emotional distress.

In sum, the Amended Complaint amounts to bare assertions of wrongfulness and formulaic recitations of legal elements—precisely the type of pleading that this Court should disregard. For the reasons explained herein, AAP respectfully requests that this Court dismiss with prejudice Plaintiff's claims against AAP.

## PLAINTIFF'S ALLEGATIONS[2]

On or about May 16, 2024, Defendant Officer William Sampson, while investigating a report of fraud involving the purchase of two cell phones, went to an Advance Auto Parts store in Dallas, North Carolina (the "Store"). (Am. Compl. ¶ 9.) Officer Sampson spoke with unnamed employees who told him that a black female had been inquiring about the status of a package delivery, had visited the Store on multiple occasions, was expected to return, and that they would collect a phone number or vehicle registration if she did. (Am. Compl. ¶¶ 10–11.)

According to Plaintiff, on May 20, 2024, Officer Sampson "received communication from Defendant Olivia Pressley, an employee of the Advanced [sic] Auto Parts Store." (Am. Compl. ¶ 12.) Ms. Pressley then "made a false report to Defendant Sampson, alleging that a black female had entered the store for the purpose of retrieving cellphones." (Am. Compl. ¶ 12.) Ms. Pressley also provided to Defendant Sampson a photograph of Plaintiff's license plate, allegedly taken on May 16, 2024, and claimed the photograph was taken on May 20, 2024, despite being "aware that this statement was false." (Am. Compl. ¶¶ 12–13, 57.)

That is the end of the story with regard to Ms. Pressley's and AAP's purported involvement. By Plaintiff's own account, Officer Sampson was "the moving force behind" what happened next, as everything that followed was the product of his independent, professional judgment. (Am. Compl. ¶ 37.)

Plaintiff alleges that after receiving the photograph of her vehicle's license plate, Officer Sampson associated the tag with Plaintiff's address, traveled to her residence, observed her in the

---

[2] AAP does not admit the truth of Plaintiff's allegations in the Amended Complaint but acknowledges the Court will assume the truth of only the well-pleaded factual allegations for purposes of this Rule 12(b)(6) motion.

vehicle, and then prepared and secured a search warrant that he executed on May 25, 2024. (Am. Compl. ¶¶ 15-16.) Plaintiff further alleges that Officer Sampson then confiscated three cell phones and a laptop from her residence, and, on July 1, 2024, reviewed GPS data from her cell phone. (Am. Compl. ¶¶ 16–17.) Then, notwithstanding what Plaintiff characterizes as exculpatory evidence, Officer Sampson secured warrants charging her with attempting to obtain property by false pretenses and identity theft. (Am. Compl. ¶ 18.) On September 1, 2024, Plaintiff was arrested. (Am. Compl. ¶ 19.) On June 23, 2025, the Gaston County District Attorney's Office dismissed the charges by *nolle prosequi*. (Am. Compl. ¶ 20.)

On July 8, 2026, based only on the above allegations, Plaintiff asserted claims against Advance Auto Parts, Inc., alleging, among other things, that Advance Auto Parts, Inc. was liable for malicious prosecution and intentional infliction of emotional distress by way of the allegedly tortious actions of Ms. Pressley (the "Initial Complaint"). (Dkt. No. 1.) Plaintiff also sued Gaston County, William Sampson, and Olivia Pressley.

On September 15, 2026, Advance Auto Parts, Inc. moved to dismiss the Initial Complaint, arguing that Plaintiff failed to allege facts sufficient to support her claims of malicious prosecution or intentional infliction of emotional distress against Advance Auto Parts, Inc. and that she failed to allege facts placing Ms. Pressley's conduct within the scope of her employment with Advance Auto Parts, Inc. (Dkt. No. 17.) Instead of addressing these fundamental deficiencies, Plaintiff filed an Amended Complaint on September 28, 2026 (Dkt. No. 23), removing Gaston County as a defendant and naming Advance Stores Company, Incorporated instead of Advance Auto Parts, Inc., but otherwise reasserting the same two claims against AAP without curing any of the deficiencies Advance Auto Parts, Inc. identified in its initial Motion to Dismiss. Plaintiff's claims against AAP for malicious prosecution and intentional infliction of emotional distress continue to rely entirely

on the conclusory invocation of "agency, vicarious liability and respondeat superior." (Am. Compl. ¶ 65.)

Because the Amended Complaint fails to materially address the deficiencies AAP identified in its Motion to Dismiss the Initial Complaint, further amendment would be futile. Accordingly, AAP respectfully requests that this Court dismiss the Amended Complaint with prejudice.

## ARGUMENT

### I. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim should be granted where the facts alleged by the plaintiff are insufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570. Although "a judge must accept as true all of the factual allegations contained in the complaint" when ruling on a Rule 12(b)(6) motion, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court need not accept "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. L.P.*, 213 F.3d 175, 180 (4th Cir. 2000). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the well-pleaded facts of a complaint do not permit the court to infer more than the "mere possibility of misconduct," the complaint has alleged—but has not shown—that the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (affirming dismissal of the complaint because the allegations therein failed to state "any claim for relief that is plausible on its face").

## II. PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED

Plaintiff's malicious prosecution claim against AAP rests on vague and conclusory allegations of wrongdoing by Ms. Pressley and the unsupported assertion that at the time of the alleged wrongful conduct she was "acting within the scope of her employment." (Am. Compl. ¶¶ 12, 65.)

Although far from clear, the Amended Complaint appears to anchor its malicious prosecution claim against AAP to the theory that Ms. Pressley initiated the criminal proceedings eventually brought against Plaintiff by (1) falsely alleging that a "black female had entered the store" to retrieve stolen phones, (2) providing a photograph of Plaintiff's license plate, and (3) falsely claiming that the photograph was taken on May 20, 2024, as opposed to May 16, 2024. (Am. Compl. ¶¶ 12–13, 56-57.)

What the Amended Complaint omits is as significant to this Court's analysis as the few substantive allegations it contains. The Amended Complaint contains no factual allegations from which this Court can plausibly infer that Ms. Pressley knew any information she provided to Officer Sampson was false. And regardless of the plausibility of that inference, Plaintiff does not sufficiently allege that Ms. Pressley's actions were committed in the scope of her employment with AAP.

This Court should, therefore, dismiss Plaintiff's malicious prosecution claim against AAP for two reasons. **First**, the allegations of Ms. Pressley's wrongful conduct are impermissibly vague and conclusory, and thus fail to establish the required elements to maintain a claim for malicious prosecution. **Second**, Plaintiff fails to allege any facts sufficient to establish that Ms. Pressley was acting within the scope of her employment at the time of the allegedly wrongful conduct.

**A. Beyond Mere Legal Conclusions, Plaintiff's Allegations Fail to State a Claim for Malicious Prosecution.**

The allegations supporting the malicious prosecution claim against Ms. Pressley falter under the slightest scrutiny. Given that Plaintiff's claim against AAP is premised on a theory of *respondeat superior*, as is discussed in more detail below, Plaintiff's malicious prosecution claim against AAP must also fail. To survive a motion to dismiss a claim for malicious prosecution, Plaintiff must allege facts showing "that the defendant (1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff." *Seguro-Suarez v. Key Risk Ins. Co.*, 261 N.C. App. 200, 211 (2018).

1) <u>Plaintiff Does Not Allege Facts to Establish Ms. Pressley Initiated a Criminal Proceeding</u>.

Under North Carolina law, a private party who merely furnishes information to law enforcement does not thereby "initiate" a criminal proceeding. *See N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.*, 366 N.C. 505, 513 (2013). Adopting Section 653 of the Restatement (Second) of Torts, the North Carolina Supreme Court held that "[w]hen a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable . . . even though the information proves to be false and his belief was one that a reasonable man would not entertain." *Id.* (quoting *Restatement (Second) of Torts* § 653 cmt. g (Am. L. Inst. 1977)). "The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings." *Id.*

The *Farm Bureau* Court discouraged claims based on the very scenario Plaintiff alleges here: a store employee responding to an officer's request for information during an ongoing

investigation, followed by that officer's own investigative decision—weeks later, and only after his own discussion with Plaintiff, his own search of her residence, and his own review of her cell phone data—to seek and obtain a warrant for the arrest of Plaintiff.

Plaintiff appears to rely on one narrow exception to the *Farm Bureau* rule: a party "initiates" a proceeding, notwithstanding independent prosecutorial discretion, only where they "knowingly provide[] false information to authorities." *Seguro-Suarez*, 261 N.C. App. at 211. Plaintiff's claim against AAP therefore rises or falls entirely on this exception. Plaintiff cannot invoke such exception simply by saying it, however. Her claim for malicious prosecution is based solely on the threadbare assertion that Ms. Pressley "knowingly and deliberately made [] false statement[s] to Defendant Sampson[.]" (Am. Compl. ¶ 12.) That is not a fact; it is the element of the exception, recited verbatim and untethered to anything more. Taking each alleged "false statement" in turn, the paucity of material allegations in the Amended Complaint becomes evident.

First, on its face, the statement "that a black female had entered the store for the purpose of retrieving cellphones" is not directed at Plaintiff at all and certainly is not accompanied by any indicia of its falsity. (Am. Compl. ¶¶ 11-12, 56.) For instance, Plaintiff alleges nothing about her race; nor does she offer any reason to believe that a black female did not enter the Store for the purpose of receiving the cellphones. Likewise, Plaintiff alleges no facts showing that Ms. Pressley knowingly misrepresented that the photograph of Plaintiff's license plate was captured on May 20, 2024, rather than several days earlier.

In both cases, Plaintiff fails to allege any facts from which this Court can infer that Ms. Pressley knew her alleged statements to Officer Sampson were untrue. *See Farm Bureau*, 366 N.C. at 514 (rejecting the "but for" formulation of a malicious prosecution claim and emphasizing the need to demonstrate that the defendant ***knew*** the statement(s) provided to law enforcement were

untrue).[3] The Amended Complaint never, for instance, alleges that Ms. Pressley identified or even ***knew*** Plaintiff. Nowhere does the Amended Complaint allege that Ms. Pressley had any interaction with Plaintiff whatsoever, or that Ms. Pressley understood the photographed license plate belonged to Plaintiff's vehicle. The Amended Complaint contains zero details of the alleged circumstances around the photograph—who took it, who was responsible for custody of it, or how Officer Sampson and the Gaston County Police Department used it in their subsequent investigation and charging decisions.

Absent such facts, simply asserting that Ms. Pressley "knowingly and deliberately" provided false information to Officer Sampson is exactly the type of bare assertion this Court should set aside. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes[.]"). To let this claim proceed on nothing more than the words "knowingly and deliberately" would strip the *Farm Bureau* protection of any meaning.[4]

---

[3] Notably, Plaintiff alleges that "[b]ut for Defendant Pressley [sic] wrongful conduct no criminal investigation or prosecution of the Plaintiff would have occurred." (Am. Compl. ¶ 58.) Consequently, Plaintiff expressly embraces the "but for" formulation of a malicious prosecution claim that the *Farm Bureau* Court rejected.

[4] The *Farm Bureau* Court recognized the need to balance the public interest in community cooperation with law enforcement and the need to guard against the abuse of that sacred trust. The Court, citing the Restatement (Second) of Torts, saw fit to reserve a malicious prosecution claim for those who would "subvert to their own ends" the power held by law enforcement, and who act with intention to harm their neighbors. *Farm Bureau*, 366 N.C. at 514. Allowing Plaintiff's tenuous theory of AAP's liability to proceed would upset this balance by discouraging companies and their employees from cooperating with police investigations.

2) Plaintiff Does Not Allege AAP Lacked Probable Cause or Acted With Malice.

Plaintiff's malicious prosecution claim against Ms. Pressley (and therefore against AAP) fails for two additional reasons.

First, the Amended Complaint does not allege, even in a conclusory manner, that Ms. Pressley acted without probable cause. Indeed, the failure to adequately allege any necessary element of a cause of action is fatal to a claim's viability on a motion to dismiss. *See Rovnyak v. City of Charlotte*, No. 22-cv-00064, 2022 U.S. Dist. LEXIS 118175, at *15-16 (W.D.N.C. July 5, 2022) (dismissing a negligent infliction of emotional distress claim for failure to allege duty—an essential element of the claim—which "alone [was] fatal").

Second, the Amended Complaint is devoid of any factual allegations supporting the element of malice. Under North Carolina law, malice in a malicious prosecution claim may be shown in two ways. Actual malice "may be shown by offering evidence that defendant 'was motivated by personal spite and a desire for revenge' or that defendant acted with 'reckless and wanton disregard' for plaintiff['s] rights." *Becker v. Pierce*, 168 N.C. App. 671, 676 (2005) (quoting *Moore v. City of Creedmoor*, 345 N.C. 356, 371 (1997)). Implied malice "may be inferred from a lack of probable cause." *Williams v. Kuppenheimer Mfg. Co.*, 105 N.C. App. 198, 203 (1992).

The Amended Complaint forecloses any implied malice theory. Notably, Plaintiff repeatedly alleges that Defendant Sampson acted "without probable cause" in securing the arrest warrants. (Am. Compl. ¶¶ 33, 48.) Yet Plaintiff never once alleges that Ms. Pressley acted without probable cause, despite AAP identifying this deficiency in its Memorandum in Support of its Motion to Dismiss the Initial Complaint. (Dkt. No. 18, at 8-9.) Plaintiff's decision to omit a probable cause allegation against Ms. Pressley therefore precludes the implied-malice theory.

Accordingly, Plaintiff can proceed only under the alternative, actual-malice theory, which requires a showing that Ms. Pressley was "motivated by personal spite and a desire for revenge" or acted with "reckless and wanton disregard" for Plaintiff's rights. *Becker*, 168 N.C. App. at 676. Plaintiff here has pleaded nothing of the kind. The Amended Complaint does not allege that Ms. Pressley harbored any ill will, spite, or personal hostility toward Plaintiff. There is no allegation that the two had ever even met, interacted, or had any prior relationship—friendly or otherwise—that could give rise to an inference of personal animosity. In *Becker*, the North Carolina Court of Appeals found a genuine issue of material fact on malice only because the record reflected a multi-year dispute between neighbors. *Id.* at 676–77. No comparable allegations appear here. Instead, Plaintiff offers precisely the sort of conclusory, formulaic recitation of an element that this Court must disregard. *See Nemet Chevrolet, Ltd.*, 591 F.3d at 255. Without any factual predicate suggesting personal spite, a desire for revenge, or a reckless and wanton disregard for Plaintiff's rights, the Amended Complaint fails to state a plausible claim on the element of malice.

Because Plaintiff fails to allege multiple essential elements of the claim,[5] this Court should dismiss Plaintiff's malicious prosecution claim against Ms. Pressley and AAP.

---

[5] The Amended Complaint also lacks critical factual allegations concerning the circumstances under which the criminal proceedings against Plaintiff were terminated, resulting in Plaintiff's failure to allege facts showing the earlier proceeding ended in her favor. *See Seguro-Suarez*, 261 N.C. App. at 211. In North Carolina, it is well established that "where the criminal action is withdrawn or terminated *by compromise* brought about by the defendant, an action for malicious prosecution based thereon, will not lie." *Alexander v. Lindsey*, 230 N.C. 663, 671 (1949) (emphasis added); *Tucker v. Duncan*, 499 F.2d 963, 965 (4th Cir. 1974) (holding that the trial court erred by submitting a malicious prosecution claim to the jury where the charges against the criminal defendant were "dismissed by way of nol-pros obtained by his attorney"). Although Plaintiff repeatedly alleges that the charges against her were dismissed by way of *nolle prosequi* (Am. Compl. ¶¶ 20, 32, 47, 59), she notably does not allege why the charges were dropped. Plaintiff's failure to allege facts supporting this element of her malicious prosecution claim further justifies dismissal.

**B. Plaintiff Fails to Allege Facts Establishing AAP's Liability Under the Doctrine of *Respondeat Superior*.**

Even assuming that the Amended Complaint's allegations were sufficient to state a malicious prosecution claim against Ms. Pressley (they are not), Plaintiff utterly fails to tie any such wrongful conduct to AAP.

"[L]iability of a principal for the torts of his agent may arise in three situations: (1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is ratified by the principal; or (3) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business. In the first two of these three situations, liability is based upon traditional agency principles; in the third of these three situations, liability is based upon the doctrine of *respondeat superior*." *Creel v. N.C. Dep't of Health & Human Servs.*, 152 N.C. App. 200, 202-03 (2002) (internal citations omitted). In her Amended Complaint, Plaintiff asserts only that Ms. Pressley was acting in the scope of her employment and "during her work hours" when she provided allegedly false information to Officer Sampson, as described above. (Am. Compl. ¶ 12.) Thus, despite a passing reference to "vicarious liability" and "agency," (Am. Compl. ¶ 65), the only possible theory under which AAP could be held liable is that of *respondeat superior*.[6]

Although juries typically decide whether an employee's misconduct was committed within the scope of her employment and in furtherance of the employer's business, "when the misconduct

---

[6] Plaintiff appears to conflate two types of vicarious liability: one based on *respondeat superior* and the other based upon "traditional agency principles." *Creel*, 152 N.C. App. at 202-03. Notably, Plaintiff does not attempt to allege—even in a conclusory manner—the elements of the agency-based theories of vicarious liability, namely, that AAP "expressly authorized" or "ratified" Ms. Pressley's allegedly wrongful acts. *Id*. This Court should disregard Plaintiff's threadbare assertion of any other theory of vicarious liability given that, when assessing a motion to dismiss pursuant to Rule 12(b)(6), courts are not required to accept legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments. *See E. Shore Mkts., Inc.*, 213 F.3d at 180.

is ‘so clearly outside the scope of employment,’ the trial court may resolve a *respondeat superior* claim, as a matter of law, in favor of the employer.” *Merrell v. Smith*, No. 19 CVS 21650, 2020 NCBC LEXIS 150, at *34, *37 (N.C. Super. Ct. Dec. 22, 2020) (quoting *Medlin v. Bass*, 327 N.C. 587, 593-94 (1990)) (internal citation omitted) (“[T]he critical question [is] whether the [misconduct] *was committed in the course of activities that the employee was authorized to perform*.”) (emphasis in original).

North Carolina courts have held that intentional tortious acts, including malicious prosecution,“are rarely considered to be within the scope of an employee’s employment.” *See Brown v. Burlington Indus., Inc.*, 93 N.C. App. 431, 437 (1989). Thus, to survive the present motion to dismiss, Plaintiff must allege facts tending to show that Ms. Pressley was “acting in furtherance of the principal’s business and for the purpose of accomplishing the duties of [her] employment.” *EEOC v. Joe’s Old Fashioned Bar-B-Que, Inc.*, No. 18-CV-00180, 2020 U.S. Dist. LEXIS 103497, at *11 (W.D.N.C. June 12, 2020) (quoting *B.B. Walker Co. v. Burns Int’l Sec. Servs., Inc.*, 108 N.C. App. 562, 566 (1993)).

The Amended Complaint makes almost no effort to demonstrate to this Court that Ms. Pressley’s allegedly wrongful actions were “committed in the course of activities that the employee was authorized to perform.” *Merrell*, 2020 NCBC LEXIS 150, at *37. The sum of Plaintiff’s allegations relevant to the claim for malicious prosecution against AAP is: (1) Olivia Pressley was an employee of “Advanced Auto Parts Store [sic],” (2) she falsely reported to Officer Sampson that a “black female” had come into the store for the purpose of retrieving cellphones, (3) she “furnished” a photograph of Plaintiff’s license plate to Officer Sampson on May 20, 2024, which had been “captured” on May 16, 2024, and (4) she did so during her work hours. (Am. Compl. ¶¶ 12–13, 56–57.)

Despite alleging that Ms. Pressley made the alleged false representations to Officer Sampson "during her work hours," Plaintiff never alleges that Ms. Pressley was on duty, on the premises, or performing any task assigned to her by AAP when she communicated with Officer Sampson; that communicating with law enforcement fell within her job responsibilities; or that she acted pursuant to any AAP policy, practice, or instruction.[7] Merely alleging that Ms. Pressley made the false representations "during her work hours" is manifestly insufficient to connect Ms. Pressley's alleged actions to her job duties.

Plaintiff's omissions are not mere technicalities—they are fatal to her claims against AAP. Without factual allegations placing Ms. Pressley's conduct within the scope of her employment *and* in furtherance of AAP's business, there is nothing from which this Court could plausibly infer that AAP is answerable for anything Ms. Pressley is alleged to have done.

For the various reasons discussed above, this Court should dismiss the malicious prosecution claim against AAP.

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To state a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must allege (1) extreme and outrageous conduct by the defendant, (2) which is intended to and does in fact cause (3) severe emotional distress. *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 487-88 (1986). Plaintiff's IIED claim against AAP fails for five reasons.

---

[7] Although Plaintiff names the correct entity (Advance Stores Company, Incorporated) in the Amended Complaint, she does not ever allege that Ms. Pressley was an employee of that entity. Instead, Plaintiff alleges, multiple times, that "Advanced Auto Parts Store," "Advanced Auto Parts," or "Advance Auto Parts, Inc." employed Ms. Pressley without ever attempting to connect any of these undefined entities with Advance Stores Company, Incorporated. (Am. Compl. ¶¶ 4, 12, 56, 65.)

**First**, Plaintiff fails to allege sufficiently extreme and outrageous conduct to state a valid IIED claim against Ms. Pressley (and therefore AAP). *See Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 354 (2004) ("Conduct is extreme and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"). As demonstrated above, Plaintiff's Amended Complaint exclusively relies on vague and conclusory allegations to characterize Ms. Pressley's conduct, without once alleging specific facts from which this Court could infer Ms. Pressley acted with outrageousness, indecency, atrocity, or intolerance. Thus, the relevant allegations in the Amended Complaint fall well short of Plaintiff's burden on a Rule 12(b)(6) motion. *See Satterwhite v. Wal-Mart Stores E., L.P.*, No. 11-CV-363, 2012 U.S. Dist. LEXIS 9584, at *13-14 (E.D.N.C. Jan. 26, 2012) (dismissing the plaintiff's IIED claim where the complaint "failed to connect . . . facts to her allegation that Wal-Mart engaged in the type of extreme and outrageous behavior that North Carolina courts are prepared to recognize").

**Second**, Plaintiff alleges no plausible claim that she suffered "severe" emotional distress. Plaintiff's allegations of "PTSD type symptoms" (Am. Compl. ¶ 60) are insufficient under North Carolina law. *See Moschos v. Moschos*, 287 N.C. App. 162, 167 (2022) (affirming dismissal of IIED claim where the plaintiff's allegations "fail[ed] to identify a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so"). Even assuming Plaintiff's bare and confusing allegation that "Plaintiff have been diagnosis with [sic] depression, anxiety and post-traumatic stress syndrome (PTSD)" (Am. Compl. ¶ 70) alleges a diagnosed condition, the Amended Complaint still "fail[s] to allege sufficient facts concerning the type, manner, or degree of severe emotional distress Plaintiff claims to have experienced." *Id.* Plaintiff alleges no facts to establish that she suffered from a "severe and

disabling" condition, and merely characterizing it as such is insufficient. *See Satterwhite*, 2012 U.S. Dist. LEXIS 9584, at *15 (finding the "bare conclusion" that the plaintiff suffered severe emotional distress insufficient to survive a motion to dismiss).

**Third**, the Amended Complaint fails to allege that Ms. Pressley *intended* to cause Plaintiff severe emotional distress. Under North Carolina law, "[a]n allegation of intent is an essential element" of an IIED claim. *Eatmon v. Nat'l Grange Mut. Ins. Co*., No. 99-CV-104-BR(3), 1999 U.S. Dist. LEXIS 6731, at *5 (E.D.N.C. Mar. 31, 1999) (citing *Waddle v. Sparks*, 331 N.C. 73 (1992)). Here, Plaintiff, as did the plaintiff in *Eatmon*, "failed to allege that [Ms. Pressley] took [her] actions with the intent to cause plaintiff emotional distress."[8] *Id.*

**Fourth**, the Amended Complaint fails to allege that Ms. Pressley's actions in fact caused Plaintiff severe emotional distress. North Carolina courts have not hesitated to dismiss emotional distress claims where the complaint exclusively relies on a formulaic recital of the causation element. *See Sturdivant v. Arc of Haywood Cnty., Inc.*, No. 18CV123, 2018 U.S. Dist. LEXIS 131822, at *13-14 (W.D.N.C. July 19, 2018) (granting dismissal of a negligent infliction of emotional distress ("NIED") claim, pointing to the plaintiff's "conclusory allegations" that "Defendant's conduct was the … proximate cause of emotional distress to Plaintiff" and that "as a direct and proximate result of the Defendants' [sic] conduct, Plaintiff ha[d] suffered damages");[9]

---

[8] At most, Plaintiff alleges Ms. Pressley intentionally made false statements. (Am. Compl. ¶¶ 12–13, 56–57, 65). Plaintiff fails, however, to allege that Ms. Pressley (or AAP) intended thereby to cause severe emotional distress.

[9] North Carolina courts repeatedly have found that there is no principled reason to analyze the shared elements of an NIED and IIED claim differently. *See, e.g.*, *Waddle*, 331 N.C. at 83 ("At a minimum, applying the same standard to both [IIED and NIED] promotes a symmetry desirable in this area of the law."); *Ortiz v. Big Bear Events, LLC*, No. 12-CV-341, 2012 U.S. Dist. LEXIS 184958, at *15-16 (W.D.N.C. Nov. 6, 2012) (same).

*Vurimindi v. Link*, No. 10CV965, 2011 U.S. Dist. LEXIS 132161, at *13–14 (M.D.N.C. Nov. 16, 2011) ("Plaintiff fails to allege facts that allow this Court to reasonably infer that he became disabled due to Defendants' conduct."), *aff'd*, 497 F. App'x 457 (4th Cir. 2012). Here, as in *Sturdivant*, Plaintiff alleges only, in conclusory terms, that Ms. Pressley's "conduct caused the Plaintiff severe emotional distress." (Am. Compl. ¶ 69.) Such conclusory allegations cannot survive a motion to dismiss, and Plaintiff's IIED claim should therefore be dismissed. *E. Shore Mkts., Inc.*, 213 F.3d at 180.

**Fifth**, the IIED claim fails for the same reasons Plaintiff's malicious prosecution claim against AAP fails. As set forth above, Plaintiff does not allege facts placing Ms. Pressley's conduct within the scope of her employment, so even if she had alleged outrageous or extreme conduct—which Plaintiff did not—there would be no basis upon which to impute any alleged outrageous or extreme conduct to AAP.

Plaintiff fails to allege extreme and outrageous conduct, fails to allege severe emotional distress under North Carolina law, and fails to tie any such conduct to AAP. For all these reasons, Plaintiff's IIED claim against AAP must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint fails to plead facts sufficient to state a plausible claim against AAP for malicious prosecution or intentional infliction of emotional distress. The Amended Complaint's failure to materially address the Initial Complaint's deficiencies reveals the futility of any further amendments. AAP therefore respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's claims against AAP with prejudice. *Woods v. Wash. Metro. Area Transit Auth.*, No. PWG-18-3494, 2019 U.S. Dist. LEXIS 134149, at *20 (D. Md. Aug. 9, 2019), *aff'd*, 785 F. App'x 188 (4th Cir. 2019) ("[W]hen a plaintiff

has had the opportunity to amend in response to a defendant's identification of pleading deficiencies but still fails to state a claim, dismissal with prejudice is appropriate because another opportunity to amend would be futile.”).

This the 13th day of October, 2026.

*/s/ Jacqueline Y. Ferrell*
Mark A. Nebrig (N.C. Bar No. 28710)
Jacqueline Y. Ferrell (N.C. Bar No. 27646)
Rashaad B. Hamilton (N.C. Bar No. 58275)
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202-4003
Telephone: (704) 331-1000
marknebrig@mvalaw.com
jacquelineferrell@mvalaw.com
rashaadhamilton@mvalaw.com
***Attorneys for Defendant***
***Advance Stores Company, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT ADVANCE STORES COMPANY, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record, including the following:

Chantel Cherry-Lassiter
N.C. Bar No. 54245
1851 Eringhaus St. # 136
Elizabeth City, NC 27909
Telephone: (252) 999-8380
Email: chantelcherrylassiter@ccllaw.org

David Goldberg
N.C. Bar No. 49229
P.O. Box 1578
Gastonia, NC  28053-1578
Telephone: (704) 866-3227
Email: David.Goldberg@gastongov.com

Scott MacLatchie
N.C. Bar No. 22824
HALL BOOTH SMITH, P.C.
11215 N Community House Road, Suite 750
Charlotte, NC 28277
Telephone: (980) 859-0380
Email: smaclatchie@hallboothsmith.com

Jonathon D. Townsend
N.C. Bar No. 51751
WAGNER HICKS PLLC
831 E. Morehead Street, Suite 860
Charlotte, North Carolina 28202
Telephone: (704) 705-8311
Email: Jonathon.townsend@wagnerhicks.law

I hereby certify that I served a copy of this Motion to Dismiss by U.S. Mail, postage prepaid, to the following parties and counsel of record:

Harry M. Daniels
GA Bar No. 234158 (PHV Pending)
4751 Best Road, Suite 205
Atlanta, GA 30337
Telephone: (678) 664-8529
Email: daniels@harrymdaniels.com

This the 13th day of October, 2026.

*/s/ Jacqueline Y. Ferrell*
Jacqueline Y. Ferrell