**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| Tamara Parker,<br><br>Plaintiff,<br><br>vs.<br><br>William Sampson, individually;<br>Advance Stores Company, Inc; d/b/a<br>Advanced Auto Parts Store;<br>Olivia Pressley, individually,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 3:26-cv-00548-MOC-MTO** |

**BRIEF OF DEFENDANT OLIVIA PRESSLEY**
**<u>IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT</u>**

Defendant Olivia Pressley ("Pressley") respectfully submits this brief in support of her motion to dismiss all claims against Pressley in the Amended Complaint for Damages filed by Plaintiff Tamara Parker ("Plaintiff"). (Doc. No. 23 (the "Am. Compl.").) Pressley moves to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiff's claims against Pressley rest on threadbare allegations that Pressley, a former employee of Advance Stores Company, Inc. ("AAP") who had never met Plaintiff, responded to a police officer's inquiry by providing a picture of Plaintiff's license plate while her vehicle was parked at the AAP store where Pressley worked. From this innocuous act, Plaintiff attempts to manufacture $15 million in claims for malicious prosecution and intentional infliction of emotional distress. Yet she alleges

no facts suggesting that Pressley harbored any ill will toward her, knew her name, had any motive or intent to harm her, or took any step to encourage a criminal investigation or proceeding against her. Nor does Plaintiff allege facts supporting a plausible inference that Pressley knowingly and intentionally made a false statement about Plaintiff to Defendant William Sampson ("Officer Sampson"), much less one that Officer Sampson relied on when, after his own independent investigation, he obtained search and arrest warrants. Instead, Plaintiff alleges that Officer Sampson knew from GPS data that she was not at the store on the date Pressley allegedly said the photograph of her license plate was taken, and that he ignored this supposedly "strong exculpatory evidence." Accepted as true, these allegations state no claim against Pressley. And allowing these claims to proceed would undermine North Carolina public policy, which "allows citizens to make reports in good faith to police and prosecutors without fear of retaliation if the information proves to be incomplete or inaccurate." *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park*, 366 N.C. 505, 513-14 (2013).

Plaintiff's claims fail for several reasons. First, Plaintiff does not allege that Pressley initiated the earlier proceedings. Pressley merely provided requested information to Officer Sampson, who exercised his own discretion to pursue the investigation and take Plaintiff into custody. And Plaintiff alleges that Officer Sampson knew Pressley's alleged misstatement was wrong before he arrested Plaintiff. Second, Plaintiff alleges no facts showing that Pressley acted with malice or without probable cause; there is no allegation of ill will, a desire for revenge, or

even that the two knew each other. Third, Plaintiff's bare allegation that the charges were dismissed by *nolle prosequi* does not plausibly allege a termination in her favor under North Carolina law. Fourth, Plaintiff's intentional infliction of emotional distress claim fails because she does not allege extreme and outrageous conduct by Pressley, intent to cause distress, or a severe and disabling emotional condition. Each deficiency independently warrants dismissal.

## RELEVANT FACTUAL ALLEGATIONS

Pressley denies many material allegations in the Amended Complaint, including that she knowingly or intentionally made any false statement about Plaintiff to Officer Sampson. Tellingly, the Amended Complaint alleges no motive for Pressley to lie to a police officer and no effort by Pressley to encourage proceedings against Plaintiff—a person Pressley had never met and toward whom she harbored no ill will. Pressley provided information to Officer Sampson only after he visited the AAP store in Dallas, North Carolina (the "Store") where she worked.

Pressley nonetheless summarizes the relevant allegations below and, as she must, treats the well-pleaded allegations as true solely for purposes of this motion.

### I. STOLEN CELLPHONES ARE ALLEGEDLY DELIVERED TO THE STORE AND NON-PARTY EVA MAYO REPORTS FRAUDULENT TRANSACTIONS ON HER CHASE BANK ACCOUNT.

Plaintiff claims that "[i]t is important to note" that a stolen cell phone was delivered to the Store on May 13, 2024, and according to Plaintiff, Pressley signed for the packages. (Am. Compl. ¶ 14.) Pressley supposedly "neglected to enter the arrival of the packages into the store's system." (Am. Compl. ¶ 14.) Plaintiff does not allege that Pressley knew the packages contained stolen phones, that she had any role in

the fraudulent purchase, or that the unlogged packages had any connection to Plaintiff or to Pressley's later communication with Officer Sampson.

On May 16, 2024, Officer Sampson spoke with Eva Mayo, who reported receiving fraud notifications from Chase Bank. (Am. Compl. ¶ 9.) Verizon Wireless processed the charges, and Ms. Mayo was notified that "the two mobile phones that had been purchased were delivered to an Advance Auto Part Store located at 1030 Dallas Cherryville Hwy, Dallas, NC." (Am. Compl. ¶ 10.) Plaintiff's allegations about the delivery date seem inconsistent as she alleges in one paragraph that the phones were delivered to the Store on May 13, 2024, (Am. Compl. ¶ 14), but in another that Ms. Mayo received notice of the delivery "on the same day" that "[t]he matter was resolved by Verizon," without identifying that day, (Am. Compl. ¶ 10).

## II. OFFICER SAMPSON VISITS THE STORE AND UNNAMED EMPLOYEES MENTION AN UNNAMED "BLACK FEMALE."

On or after May 16, 2024, Officer Sampson visited the Store where "[a]ccording to his testimony, employees informed him that a black female had been inquiring about the status of a package delivery." (Am. Compl. ¶ 11.) The unnamed "employees mentioned that the woman had visited the store on multiple occasions and that they were expecting her to return." (Am. Compl. ¶ 11.) Officer Sampson then "stated that the employees indicated they would collect a phone number or vehicle registration should the woman come back." (Am. Compl. ¶ 11.) Plaintiff does not allege that she is the "black female" these employees described, or that Pressley was among the employees Officer Sampson spoke with that day.

## III. PRESSLEY ALLEGEDLY TELLS OFFICER SAMPSON ABOUT AN UNNAMED "BLACK FEMALE" WHO VISITED THE STORE AND "FURNISHES" A PICTURE OF PLAINTIFF'S LICENSE PLATE WHILE HER VEHICLE WAS PARKED AT THE STORE.

On May 20, 2024, Officer Sampson "received communication" from Pressley who "made a false report to Defendant Sampson, alleging that a black female had entered the store for the purpose of retrieving cellphones." (Am. Compl. ¶ 12.) Pressley also "furnished a photograph of the license plate belonging to Plaintiff's vehicle, which had been captured on May 16, 2024, when Plaintiff visited the store in search of an automotive component for her spouse." (Am. Compl. ¶ 12.) In a departure from the original Complaint, the Amended Complaint now alleges that "Defendant Pressley knowingly and deliberately made this false statement to Defendant Sampson, thereby falsely identifying Plaintiff as the black female who allegedly entered the store to retrieve the cellphones on May 20, 2024." (Am. Compl. ¶ 12.) The original Complaint, in contrast, did not allege that Pressley reported to Officer Sampson that Plaintiff was the black female who came to the store to retrieve the cellphones on May 20, 2024.

Plaintiff also alleges that "Pressley submitted pictures of the Plaintiff's vehicle registration tag to Defendant Sampson, claiming that the pictures were taken on May 20, 2024" and "[a]t the moment she transmitted the pictures and informed Defendant Sampson that they were captured on May 20, 2024, she was aware that the statement was false." (Am. Compl. ¶ 13.) Plaintiff does not deny that the vehicle belonged to her or that it was parked at the Store on May 16, 2024, but she disputes that her car was parked at the Store on May 20, 2024.

## IV. OFFICER SAMPSON INVESTIGATES PLAINTIFF AND EXERCISES HIS INDEPENDENT JUDGMENT TO OBTAIN WARRANTS FOR HER ARREST WITHOUT ANY FURTHER INVOLVEMENT OR EFFORTS BY PRESSLEY.

After receiving the pictures from Pressley, Officer Sampson was able to "ascertain that the vehicle was associated with the Plaintiff's address." (Am. Compl. ¶ 15.) Officer Sampson went to Plaintiff's last known address and "observed the Plaintiff inside the vehicle in question." (Am. Compl. ¶ 15.) He then "prepared and secured a search warrant to conduct a search of the Plaintiff's residence." (Am. Compl. ¶ 15.)

On May 25, 2024, Officer Sampson searched Plaintiff's residence where he found three cellphones and a laptop that he confiscated. (Am. Compl. ¶ 16.) Plaintiff informed Officer Sampson that she had only visited the Store on May 16, 2024, to purchase a bolt and asked to review the surveillance video while "categorically den[ying] any involvement in the identity theft or the acquisition of the phones." (Am. Compl. ¶ 16.) She also provided her cellphone password to Officer Sampson so he could examine the cellphone for evidence. (Am. Compl. ¶ 16.)

On July 1, 2024, Officer Sampson examined the GPS data from Plaintiff's cellphone, which, according to Plaintiff, "***definitively confirmed*** that the Plaintiff was present solely at the [AAP] store on May 16, 2024," (Am. Compl. ¶ 17 (emphasis added)), correcting any alleged misstatement by Pressley. Plaintiff further alleges that the "GPS data also ***irrefutably demonstrated*** that the Plaintiff was not in proximity to the [AAP] store on May 20, 2024, contrary to what Defendant Pressley reported to Defendant Sampson." (Am. Compl. ¶ 17 (emphasis added).) Plaintiff thus alleges that Officer Sampson knew by July 1, 2024–before he arrested her–that she

was not at the Store on May 20, 2024.

Nonetheless, Officer Sampson supposedly ignored the "compelling exculpatory evidence that refutes the Plaintiff's culpability" and "on July 10, 2024, Defendant Sampson secured warrants against the Plaintiff for allegedly attempting to acquire property through false pretenses and for identity theft." (Am. Compl. ¶ 18; *see also id.* ¶ 28.) The Amended Complaint added an allegation that "[a]t the time Defendant Sampson secured the warrant he did not possess any financial records, physical evidence, digital evidence, computer or cell phone evidence that directly or indirectly tied the Plaintiff to the crime." (Am. Compl. ¶ 18.) Plaintiff further alleges that "Defendant Sampson acted . . . without probable cause at the time [he] obtained a warrant that resulted in the arrest of the Plaintiff." (Am. Compl. ¶¶ 33, 48.) On September 1, 2024, Plaintiff was taken into custody for acquiring property through fraudulent means and for engaging in identity theft. (Am. Compl. ¶ 19.) Plaintiff alleges that she was taken into custody "[a]s a direct and proximate result of the Defendant Sampson's wrongful conduct." (Am. Compl. ¶ 46.)

On June 23, 2025, the Gaston County District Attorney's Office dismissed the charges through a *nolle prosequi*. (Am. Compl. ¶ 20.) Plaintiff offers no further details about the *nolle prosequi* or the dismissal of her charges.

## ARGUMENT

"To survive a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), [Plaintiff] must allege facts sufficient to state all the elements of [her] claim." *Aljizzani v. Middle E. Broad. Networks, Inc.*, 178 F.4th 863, 868 (4th Cir. 2026)

(cleaned up). Plaintiff "cannot rely on labels and conclusions, and a formulaic recitation of the element of a cause of action." *Id.* (cleaned up). Her complaint must instead "contain sufficient *factual matter*, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 868-69 (cleaned up).

## I. PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED BECAUSE THE ALLEGATIONS DO NOT SUPPORT A PLAUSIBLE INFERENCE THAT PRESSLEY'S SINGLE STATEMENT TO OFFICER SAMPSON CONSTITUTES MALICIOUS PROSECUTION.

To survive a motion to dismiss her malicious prosecution claim against Pressley, Plaintiff must sufficiently plead that "(1) [Pressley] initiated the earlier proceeding; (2) malice on the part of [Pressley] in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of [Plaintiff]." *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park*, 366 N.C. 505, 512 (2013) ("*Cully's Motorcross*"). The Amended Complaint does not plead sufficient facts as to any of the four elements.

### *A. Plaintiff failed to allege facts showing that Pressley "initiated the earlier proceeding."*

The Supreme Court of North Carolina has adopted Comment (g) to Section 653 of the Restatement (Second) of Torts for malicious prosecution claims against a private person who gives information to a public official. *Id.* at 513. That test replaced the more attenuated "but for" causation test to "adequately account for the roles played by police and prosecutorial discretion" and "recognize[] that police and

prosecutors have discretionary authority that can insulate from liability those who provide erroneous or mistaken information." *Id.* at 513-14. Quoting Comment (g), the Court explained:

> ***Influencing a public prosecutor.*** A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rules stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

*Id.* at 513 (quoting Restatement (Second) of Torts § 653 cmt. g (1977) ("Section 653" and "Comment G")).

Comment G further provides that "if . . . the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible and a prosecution ***based upon it*** is procured by the person giving the false information." Comment G (emphasis added). Critically, Comment G imposes liability only if (i) the private person's "desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution," or (ii) "the information furnished by [the private

person] ***upon which the official acted*** was known to be false." *Id.* (emphasis added).

Plaintiff cannot satisfy the Restatement's causation standard by merely reciting that "[b]ut for Defendant Pressley['s] wrongful conduct no criminal investigation or prosecution of the Plaintiff would have occurred." (Am. Compl. ¶ 58.) *Cully's Motorcross* expressly abandoned "but for" causation. *See Cully's Motorcross*, 366 N.C. at 515 (explaining that "[u]nlike the 'but for' test employed by the trial court and the Court of Appeals, the Restatement recognizes that police and prosecutors have discretionary authority that can insulate from liability those who provide erroneous or mistaken information"). Plaintiff must also allege facts supporting a plausible inference that Pressley knew the statement was false and that any allegedly false information was material to the proceedings and acted upon by Officer Sampson in the decision to initiate proceedings. *See, e.g.*, *Lindsey v. Orlando*, 232 F. Supp. 3d 1027, 1032 (N.D. Ill. 2017) ("Put another way, a proceeding is considered 'commenced' by a private citizen when the prosecution is 'based upon' the false information.") (quoting Restatement (Second) of Torts § 653 cmt. g); *King v. Graham*, 126 S.W.3d 75, 78 (Tex. 2003) (explaining that under Comment G, a defendant cannot be liable if the allegedly false information "was immaterial to the decision to prosecute"); *Conner v. Juarez*, No. SA:15-CV-416-DAE, 2016 WL 552971, at *3 (W.D. Tex. Feb. 10, 2016) (explaining that alleging that plaintiff knowingly provided false information is *necessary* for liability "but such proof is not sufficient" for liability because "plaintiff must also prove that the prosecutor 'acted based on the false information' and would

not have decided to prosecute in the absence of such information") (cleaned up).[1]

Although the Amended Complaint now adds conclusory language that Pressley "falsely identif[ied] Plaintiff as the black female" who entered the store (Am. Compl. ¶ 12)—language absent from the original Complaint—Plaintiff still alleges only two statements by Pressley to Officer Sampson. Plaintiff first contends that Pressley made a false report to Officer Sampson, alleging that "a black female had entered the store for the purpose of retrieving cellphones." (Am. Compl. ¶ 12.) Second, Plaintiff alleges that Pressley sent Officer Sampson a picture of Plaintiff's license plate and registration tag, "thereby falsely identifying Plaintiff as the black female who allegedly entered the store to retrieve the cellphones on May 20, 2024." (Am. Compl. ¶ 12.) According to Plaintiff, Pressley claimed the picture was taken on May 20, 2024, and "[a]t the moment she transmitted the pictures and informed Defendant Sampson that they were captured on May 20, 2024, she was aware that the statement was false." (Am. Compl. ¶ 13.) Neither alleged statement constitutes an identification of Plaintiff, and these threadbare allegations still cannot support a claim for several reasons.

First, Plaintiff's allegation that Pressley "was aware that [this] statement was

---

[1] Other jurisdictions interpreting Section 653 and Comment G have held that a plaintiff must at least allege and prove that the proceedings were "based upon" the allegedly false statement by a private person. *See, e.g.*, *Danielson v. Hess*, 807 N.W.2d 113, 117 (S.D. 2011) ("This independent causation requirement has also been adopted in the Restatement (Second) of Torts § 653 cmt. g (1977)"); *Randall v. Lemke*, 726 N.E.2d 183, 186 (Ill. App. Ct. 2000); *Tucker v. Heaton*, No. 5:14-cv-00183-TBR-LLK, 2016 WL 7007527, at *9 (W.D. Ky. Nov. 29, 2016) (granting summary judgment where "decision to prosecute was based on an independent investigation, and not on the allegedly false information [defendant] supplied").

false"—and her new allegation that Pressley acted "knowingly and deliberately"—are precisely the conclusory assertions that *Twombly* and *Iqbal* forbid. Plaintiff alleges no facts from which knowledge of falsity or deliberateness could plausibly be inferred, and none suggesting why Pressley would deliberately mislead Officer Sampson about a person she had never met. The Amended Complaint does not even allege facts showing that Pressley knew the photograph depicted *Plaintiff's* vehicle, as opposed to simply a vehicle at the Store. Without any factual foundation, these allegations are mere recitals of the legal standard dressed up as facts. The Fourth Circuit has rejected similar conclusory allegations where knowledge of falsity is an element of the claim, and the Court should do so here. *See, e.g.*, *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) (describing assertions that statements "were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard to their veracity" as "entirely insufficient" and "precisely the sort of allegations that *Twombly* and *Iqbal* rejected") (cleaned up); *Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 821 F. App'x 234, 240 (4th Cir. 2020) (holding that "[a] conclusory allegation of knowledge of falsity or reckless disregard thereof" is "entirely insufficient"); *Raceredi Motorsports, LLC v. Roush & Yates Racing Engines, LLC*, No. CIV. JKB-11-1309, 2011 WL 6026694, at *2 (D. Md. Dec. 2, 2011) ("[A] plaintiff alleging fraud may generally allege conditions of mind such as intent or knowledge but the plaintiff 'must still meet the minimum pleading standards by alleging specific facts supporting an inference of fraudulent intent.'").

Any inference is also unwarranted because the obvious alternative explanation is that Pressley mistakenly suggested through the timing of her communication that the picture was taken on May 20, 2024, or that Officer Sampson inadvertently assumed the picture was taken the day it was sent to him. *See Aljizzani*, 178 F.4th at 869 (finding that inference of discrimination was "unwarranted and implausible, particularly in light of the obvious alternative explanation"); *see also Bang Laugh Love, LLC v. Viragh*, No. 7:23CV00633, 2024 WL 1676841, at *4 (W.D. Va. Apr. 18, 2024) (dismissing claims because "Defendants have alleged nothing beyond insufficient labels and conclusions to show that any false statement was more than simply a mistake, or misunderstanding").

Second, the Amended Complaint still alleges no facts suggesting Officer Sampson based later warrants, proceedings, or decisions on any alleged misstatement by Pressley. Notably, the Amended Complaint adds a new allegation that "[a]t the time Defendant Sampson secured the warrant he did not possess any financial records, physical evidence, digital evidence, computer or cell phone evidence that directly or indirectly tied the Plaintiff to the crime." (Am. Compl. ¶ 18.) This allegation, even if true, does not establish that Officer Sampson relied on Pressley's statements—it only suggests he lacked other evidence. Indeed, Plaintiff still alleges that "[a]s a direct and proximate result of the Defendant Sampson's wrongful conduct . . . Plaintiff was taken into custody," (Am. Compl. ¶¶ 31, 46), and that "[t]he acts or omissions of Defendant Sampson were the moving force behind Plaintiff's malicious prosecution and injuries," (Am. Compl. ¶ 51; *see also id.* ¶ 37). By Plaintiff's own

account, then, it was Officer Sampson's conduct that drove the proceedings. Plaintiff's allegation also undercuts causation because if Officer Sampson had treated Pressley's photograph and its date as evidence tying Plaintiff to the crime, he would have possessed the very "digital evidence, computer or cell phone evidence that directly or indirectly tied the Plaintiff to the crime" that Plaintiff alleges he lacked.

The Amended Complaint's causation allegation against Pressley now asserts that "[b]ut for Defendant Pressley wrongful conduct no criminal investigation or prosecution of the Plaintiff would have occurred." (Am. Compl. ¶ 58.) But this type of attenuated "but for" causation is precisely what the North Carolina Supreme Court rejected as insufficient for a malicious prosecution claim against a private person. *See Cully's Motorcross*, 366 N.C. at 513-14. And the same paragraph alleges only that Pressley's conduct "instigated/initiated a criminal investigation" (Am. Compl. ¶ 58), not that she initiated a criminal proceeding. Providing information that prompts a police investigation is exactly what Comment G protects, because the officer's investigation and charging decision remain his own. Plaintiff's own chronology confirms as much. Between Pressley's May 20, 2024 communication and the July 10, 2024 arrest warrants, Officer Sampson independently researched the vehicle registration, went to Plaintiff's residence and observed her, prepared and obtained a search warrant, searched her home and seized devices, interviewed Plaintiff, and reviewed her cellphone GPS data. (Am. Compl. ¶¶ 15-18.) Only then, and with knowledge of the GPS data, did he exercise his discretion to seek arrest warrants. (Am. Compl. ¶¶ 18, 29.)

Nor does Plaintiff allege that Pressley did anything beyond answering Officer Sampson's questions to initiate, encourage, or direct any proceeding. Plaintiff does not allege that Pressley even knew Plaintiff's name or that she communicated with Officer Sampson after sending him the picture. *See Wehrle v. Brooks*, 269 F. Supp. 785, 791 (W.D.N.C. 1966), *aff'd*, 379 F.2d 288 (4th Cir. 1967) (noting that there was not a "scintilla of evidence" that defendant "either instituted or procured the prosecution of [the plaintiff]" where the plaintiff was "unable to offer any evidence tending to show that [the defendant] even knew [the plaintiff's] name prior to the day she made positive identification of him"); *Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 196 (1991) (finding that defendant did not initiate proceedings where officer and supervisor arrested plaintiff based on information they received from defendant's agents but they were not directed to do so or to press charges and defendant's agents did not appear at the magistrate's office at any time).

Third, Plaintiff alleges that Officer Sampson knew after he examined Plaintiff's cellphone on July 1, 2024, that Plaintiff was not at the Store on May 20, 2024. According to Plaintiff, the GPS data "definitively confirmed" that Plaintiff was only there on May 16 and "irrefutably demonstrated that the Plaintiff was not in proximity to [the AAP] store on May 20, 2024, contrary to what Defendant Pressley reported to Defendant Sampson." (Am. Compl. ¶ 17.) The Amended Complaint adds that Officer Sampson "was aware the GPS evidence that materially undermined Defendant Pressley identification of the Plaintiff on May 20, 24 and ignored it." (Am. Compl. ¶¶ 18, 29.) Based on this alleged definitive confirmation and irrefutable

evidence, Plaintiff maintains that Officer Sampson knew before he secured arrest warrants that Plaintiff was not at the Store on May 20, 2024. (Am. Compl. ¶¶ 18, 28, 29, 45.) These allegations negate any inference that the arrest of Plaintiff was based upon Pressley's alleged misstatement about the date of the photograph. *See Brown v. Gap Inc.*, No. 1:22-cv-00165, 2023 WL 3743134, at *8 (M.D. Pa. May 31, 2023). In *Brown*, a Pennsylvania federal court applied Pennsylvania law and Section 653 to dismiss malicious prosecution claims against Gap Inc. despite allegations that employees of Gap Inc.'s stores provided false statements to the police. *Id.* at *7-8. The court explained that, according to the plaintiffs' allegations, "prior to Plaintiffs' arrests, and despite the initial representations by [an Old Navy employee], the Officer Defendants had actual knowledge of the fact that Plaintiffs had neither stolen any merchandise nor committed any other crime and, in fact, knew that they lacked probable cause to arrest Plaintiffs." *Id.* at *8. Thus, the officers were "not deprived of an intelligent exercise of their discretion," because the officers "knew they lacked probable cause," and "ignored exculpatory statements and other evidence." *Id.*

The same is true here. Plaintiff alleges that before Officer Sampson obtained an arrest warrant or took her into custody, he knew she was not at the Store on May 20, 2024, and that is the only allegedly false statement about Plaintiff attributed to Pressley. The Amended Complaint's new allegations only reinforce this conclusion. Plaintiff now alleges that Officer Sampson "was aware the GPS evidence that materially undermined Defendant Pressley identification of the Plaintiff on May 20, 24 and ignored it" and that he "omitted from his warrant application that the GPS

data undermined Defendant Pressley identification of the Plaintiff on May 20, 24." (Am. Compl. ¶¶ 18, 29.) Plaintiff further alleges that Officer Sampson ignored "compelling exculpatory evidence that refutes the Plaintiff's culpability," (Am. Compl. ¶ 18), and "acted . . . without probable cause at the time [he] obtained a warrant that resulted in the arrest of the Plaintiff," (Am. Compl. ¶ 33). As in *Brown*, Plaintiff's own allegations show that Officer Sampson was not deprived of an intelligent exercise of his discretion. Plaintiff therefore has not alleged that Pressley initiated the proceedings.

Plaintiff's allegations about the warrant application break any causal chain to Pressley for an additional reason. Plaintiff alleges that Officer Sampson "omitted from his warrant application that the GPS data undermined Defendant Pressley identification of the Plaintiff." (Am. Compl. ¶¶ 18, 29, 45.) If true, any misimpression in the warrant process was Officer Sampson's own because he possessed the information correcting the alleged misstatement about the photograph's date and allegedly chose to withhold it. An officer's independent decision to withhold known exculpatory evidence is an intervening exercise of discretion that makes the resulting proceeding "his own," not one "based upon" information from Pressley. *See* Comment G; *Cully's Motorcross*, 366 N.C. at 513-14. Plaintiff cannot allege both that Officer Sampson knew the truth and concealed it and that Pressley deprived him of the ability to exercise his discretion intelligently.

Nor can Plaintiff salvage her claim by pointing to the search warrant executed on May 25, 2024. The Amended Complaint alleges no facts connecting Pressley's

statement about the photograph's date to Officer Sampson's decision to seek one. It alleges only that Officer Sampson used the photograph to identify Plaintiff's address—information equally available regardless of when the photograph was taken. (Am. Compl. ¶ 15.) Indeed, Plaintiff admits that the photograph depicted her vehicle at the Store; the only alleged falsehood concerns the date, not the vehicle's identity or its presence at the Store. Plaintiff has not alleged that the prosecution was "based upon" any alleged misstatement by Pressley.

Because Plaintiff has not alleged that Pressley initiated the earlier proceedings, her malicious prosecution claim against Pressley should be dismissed.

### *B. Plaintiff failed to allege facts showing that Pressley acted with malice or that Pressley lacked probable cause.*

"'Malice' in a malicious prosecution claim may be shown by offering evidence that defendant 'was motivated by personal spite and a desire for revenge' or that defendant acted with 'reckless and wanton disregard' for plaintiffs' rights." *Fox v. City of Greensboro*, 279 N.C. App. 301, 316 (2021) (cleaned up). The malice element of a malicious prosecution claim may be satisfied by alleging actual malice or implied malice, which "may be inferred from want of probable cause in reckless disregard of the plaintiff's rights." *Kirschbaum v. McLaurin Parking Co.*, 188 N.C. App. 782, 789 (2008) (cleaned up); *but see Franklin v. Yancey Cnty.*, No. 1:09CV199, 2010 WL 317804, at *6 (W.D.N.C. Jan. 19, 2010) (dismissing malicious prosecution claim where plaintiff merely alleged that "there existed no probable cause for the criminal charge"). To seek punitive damages, Plaintiff must allege actual malice, meaning Plaintiff must allege facts showing that Pressley harbored "personal ill-will" or acted

"under circumstances of insult, rudeness, or oppression, or in a manner which showed the reckless and wanton disregard of the plaintiff's rights." *Mathis v. Dowling*, 230 N.C. App. 311, 316 (2013) (cleaned up). Plaintiff must allege "more than mere legal conclusions and recitations of the elements to sufficiently allege malice." *Dahlman v. Washington Montessori, Inc.*, 818 F. Supp. 3d 772, 783 (E.D.N.C. 2025).

Plaintiff never alleges that Pressley acted without probable cause, which forecloses any malice implied from a lack of probable cause. And her allegations fall far short of actual malice. She alleges no facts suggesting that Pressley harbored ill will, spite, or personal hostility toward her, or desired revenge. She does not allege that the two had ever met, interacted, or had any prior relationship. To the contrary, Plaintiff alleges that Pressley communicated with Officer Sampson only after he visited the Store as part of his investigation, and that Pressley did not pursue, encourage, or initiate any further proceedings or charges against Plaintiff. These allegations eliminate any plausible inference of actual malice. *See Kirschbaum*, 188 N.C. App. at 790 (finding no malice where defendants did not express any desire to press charges and "Raleigh Police proceeded with misdemeanor larceny charge on their own steam, not defendants'"); *Mathis*, 230 N.C. App. at 316 (finding no evidence of malice because, among other things, the defendant only became involved at the request of a detective and did not pursue the criminal investigation).

### ***C. Plaintiff's allegation that "all charges were dismissed . . . through a nolle prosequi" does not satisfy the fourth element.***

Plaintiff's only allegation as to the termination of the earlier proceeding in favor of Plaintiff is that "[o]n June 23, 2025, all charges were dismissed by the Gaston

County District Attorney's Office through a nolle prosequi." (Am. Compl. ¶ 20; *see also id.* ¶¶ 32, 47, 59.) Although dismissal through a *nolle prosequi* may satisfy this element in certain circumstances, merely pleading dismissal through a *nolle prosequi* without any additional allegations about the dismissal or allegations showing that dismissal through a *nolle prosequi* indicated Plaintiff's innocence does not allege facts to support a plausible inference that the earlier proceeding terminated in favor of Plaintiff for purposes of a North Carolina malicious prosecution claim. *See Tucker v. Duncan*, 499 F.2d 963, 965 (4th Cir. 1974) (overturning North Carolina malicious prosecution verdict based on charges dismissed "by way of nol-pros" obtained by plaintiff's attorney); *Alexander v. Lindsey*, 230 N.C. 663, 671 (1949) ("[W]here the criminal action is withdrawn or terminated by compromise brought about by the defendant, an action for malicious prosecution based thereon will not lie."); *see also* Restatement (Second) of Torts §§ 660, 661 (1977).

Plaintiff's lone allegation that the charges were dismissed by *nolle prosequi* does not adequately allege that the prior proceeding terminated in her favor.

## II. PLAINTIFF FAILED TO PLEAD A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST PRESSLEY.

"The essential elements of an action for intentional infliction of emotional distress ["IIED"] are 1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82 (1992) (cleaned up). Plaintiff's IIED claim against Pressley also fails for multiple reasons.

First, the Amended Complaint still does not meet the "stringent" standard for

extreme and outrageous behavior. *Id.* at 83. Plaintiff must allege extreme and outrageous acts by Pressley that "exceed[] all bounds usually tolerated by decent society." *Dickens v. Puryear*, 302 N.C. 437, 446 (1981); *see also Critzer v. Town of Wendell*, No. 5:25-CV-00442-BO-KS, 2026 WL 777419, at *3 (E.D.N.C. Mar. 19, 2026) ("Whether conduct is extreme and outrageous is a question of law."). Plaintiff relies instead on vague, conclusory group pleading[2] that "Defendants['] extreme and outrageous conduct caused the Plaintiff severe emotional distress, including stress, depression, anxiety and loss of enjoyment of life" and that "Defendant[s'] conduct was recklessly indifferent to the likelihood it would cause severe emotional distress to the Plaintiff." (Am. Compl. ¶¶ 69, 71.) The IIED claim does not identify a single act by Pressley, and it incorporates only paragraphs 1 through 24 of the Amended Complaint, omitting every allegation in Plaintiff's malicious prosecution claim against Pressley. (Am. Compl. ¶ 68.) The only conduct attributed to Pressley in the incorporated paragraphs is a single communication to a police officer who came to the Store asking for information, and the transmission of a photograph of a vehicle license plate that Plaintiff admits was parked at the Store. (Am. Compl. ¶¶ 11-13.) Responding to a police officer's request for information is not conduct "beyond all possible bounds of decency," even if it could be mischaracterized as accusing Plaintiff of a crime. *See, e.g., Chidnese v. Chidnese*, 210 N.C. App. 299, 317 (2011) (collecting

[2] Alleging acts by "Defendants" is disfavored as it often fails to satisfy the pleading standards under *Twombly* and *Iqbal* because Plaintiff must plead facial plausibility of each claim against each defendant. *See Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023).

cases holding that false reports of child abuse and other criminal charges were not extreme and outrageous); *Barber v. Coastal Horizons Ctr., Inc.*, No. 7:21-CV-00061-M, 2022 WL 22608317, at *3 (E.D.N.C. July 1, 2022) ("North Carolina courts have held that false accusations of criminal conduct do not qualify as extreme and outrageous conduct."). Plaintiff's labels, buzzwords, and incorporation by reference of unspecified allegations fall far short of pleading an IIED claim under North Carolina law. *See, e.g.*, *Satterwhite v. Wal-Mart Stores East, L.P.*, No. 5:11-CV-363, 2012 WL 255347, at *13-14 (E.D.N.C. Jan. 26, 2012) (dismissing IIED claim based on factual allegations "incorporated by reference" because the allegations do not connect allegations to specific conduct alleged to be extreme and outrageous).

Second, Plaintiff's IIED claim suffers from the same defect as her malicious prosecution claim as she cannot plausibly allege that Pressley intended to cause her emotional distress when she does not allege that Pressley knew her name or had any motive to harm her. *See, e.g.*, *Piro v. McKeever*, 245 N.C. App. 412, 419 (2016) (affirming dismissal under notice pleading standard based on "conclusory allegations" where "plaintiff fails to assert any facts that would establish defendant [] knew or had substantial certainty plaintiff would suffer severe emotional distress as a result of [defendant's alleged acts]"); *Vurimindi v. Link*, No. 1:10CV965, 2011 WL 5570216, at *4 (M.D.N.C. Nov. 16, 2011) ("Plaintiff must allege sufficient facts for this Court to reasonably infer that Defendants intended to cause and did cause Plaintiff severe emotional distress."). Plaintiff's generic allegation that unspecified "Defendant[s'] conduct was recklessly indifferent to the likelihood it would cause

severe emotional distress" (Am. Compl. ¶ 71) does not cure this deficiency. Plaintiff alleges no facts suggesting that Pressley—who never met Plaintiff—had any reason to foresee that providing a photograph of a license plate to an investigating officer would cause Plaintiff severe emotional distress.

Among other deficiencies, Plaintiff also cannot allege that any act by Pressley did in fact cause the alleged emotional distress, which Plaintiff attributes to "[her] unlawful arrest." (Am. Compl. ¶ 60.) Plaintiff alleges that Pressley's acts only "instigated/initiated a criminal investigation" that "resulted in the Plaintiff's arrest and prosecution." (Am. Compl. ¶ 58.) This conclusory allegation is insufficient to establish proximate cause for an IIED claim. *See Sturdivant v. Arc of Haywood Cnty., Inc.*, No. 1:18CV123, 2018 WL 3717214, at *6 (W.D.N.C. July 19, 2018) (dismissing NIED claim where plaintiff failed to "sufficiently allege that it was reasonably foreseeable to Defendant that its conduct would cause severe emotional distress"). Plaintiff elsewhere attributes her arrest, and the same emotional injuries, to Officer Sampson, alleging that she was taken into custody "[a]s a direct and proximate result of the Defendant Sampson's wrongful conduct," and that "Defendant Sampson's action caused the Plaintiff to suffer physical ailments, emotional distress, with significant PTSD type symptoms . . . from his unlawful arrest." (Am. Compl. ¶¶ 31, 34, 46, 49.) Moreover, as discussed above, Plaintiff alleges that Officer Sampson knew the GPS data refuted Pressley's alleged misstatement and chose to ignore it and omit it from his warrant application before arresting Plaintiff. (Am. Compl. ¶¶ 18, 29, 45.) That independent decision breaks any causal chain between Pressley's

communication and the arrest from which Plaintiff's distress allegedly arises.

Third, Plaintiff's allegations of severe emotional distress are still insufficient. Plaintiff now alleges that she has "been diagnos[ed] with depression, anxiety and post-traumatic stress syndrome (PTSD) [d]ue to the Plaintiff's emotional distress" and that she "is currently receiving medical treatment from a physician due to her severe emotional distress." (Am. Compl. ¶ 70.) She also alleges that unspecified conduct by unidentified "Defendants" caused "severe emotional distress, including stress, depression, anxiety and loss of enjoyment of life." (Am. Compl. ¶ 69.) However, merely alleging a diagnosis—without any factual allegations about the intensity, duration, or disabling nature of the condition—still does not satisfy the "severe emotional distress" element. *See Moschos v. Moschos*, 287 N.C. App. 162, 166 (2022) ("[W]ithout factual allegations regarding the type, manner, or degree of severe emotional distress a plaintiff claims to have experienced, a plaintiff's complaint fails to sufficiently allege severe emotional distress."); *Lineberger v. Newton Police Dep't*, No. 514CV00137RLVDCK, 2016 WL 5376290, at *4 (W.D.N.C. Sept. 23, 2016) (dismissing IIED claim based on "few allegations regarding the intensity, impact, and duration of the mental pain [plaintiff] experienced"). Nor does Plaintiff allege when she was diagnosed, by whom, or that any diagnosis resulted from conduct by Pressley, as opposed to her arrest by Officer Sampson, which Plaintiff separately alleges caused her "PTSD type symptoms." (Am. Compl. ¶¶ 34, 49, 70.)

For these reasons, Plaintiff's IIED claim against Pressley should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Pressley respectfully requests that the claims against her be dismissed with prejudice.

This, the 13th day of October, 2026.

**WAGNER HICKS PLLC**

/s/ *Jonathon D. Townsend*
Jonathon D. Townsend (N.C. State Bar No. 51751)
831 E. Morehead Street, Suite 860
Charlotte, NC 28202
Telephone: (704) 705-7787
jonathon.townsend@wagnerhicks.law

*Counsel for Defendant Olivia Pressley*

## CERTIFICATION OF BRIEF LENGTH

I hereby certify that the foregoing **BRIEF OF DEFENDANT OLIVIA PRESSLEY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** complies with Local Rule 7.1(d), and that this brief does not exceed 25 pages, the font size is a minimum of 12 point, lines are double-spaced, margins are one inch, and each page is numbered.

This, the 13th day of October, 2026.

**WAGNER HICKS PLLC**

/s/ *Jonathon D. Townsend*
Jonathon D. Townsend

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of filing to all parties receiving electronic service including the following:

Latrisha Chantel Cherry-Lassiter
CCL LAW OFFICE, PLLC
1851 W. Ehringhaus St. #126
Elizabeth City, NC 27909
chantelcherrylassiter@ccllaw.org
*Counsel for Plaintiff*

Scott Douglas MacLatchie
HALL BOOTH SMITH, P.C.
11215 North Community House Rd
Suite 750, Charlotte, NC 28277
smaclatchie@hallboothsmith.com
David Benjamin Goldberg
OFFICE OF THE COUNTY ATTORNEY
PO Box 1578, Gastonia, NC 28052
david.goldberg@gastongov.com
*Attorneys for William Sampson*

Mark Andrew Nebrig
Gabrielle Rife
Jacqueline Y. Ferrell
Rashaad Bryon Hamilton
MOORE & VAN ALLEN
100 North Tryon St, Ste 4700
Charlotte, NC 28202
marknebrig@mvalaw.com
gabriellerife@mvalaw.com
jacquelineferrell@mvalaw.com
rashaadhamilton@mvalaw.com
*Counsel for Defendant Advance Auto Parts, Inc.*

This, the 13th day of October, 2026.

**WAGNER HICKS PLLC**

/s/ *Jonathon D. Townsend*
Jonathon D. Townsend